S. S. Kresge Company, a Corp., Appellant, v. Morris Shankman
and Agnes E. Shankman, his wife (Agnes E. Shankman, Ad-
ministratrix of the Estate of Morris Shankman, Deceased,
Substituted by Order of Court), and Mildred Godfried and
Gilbert Godfried, her Husband, Respondents.—212 S. W. 2d
794.

Kansas City Court of Appeals.   Opinion delivered May 24, 1948.

*Maurice J. O'Sullivan* and *John G. Killiger, Jr.,* for appellant, S. S. Kresge Company, a corporation.

*Arthur N. Adams* and *Arthur N. Adams, Jr.,* for respondents, Mildred Godfried and Gilbert Godfried.

*Charles E. McCoy* and *Grant I. Rosenzweig* for Shankmans.

644

BOYER, C.—This action was instituted April 19, 1945 under the Declaratory Judgment Act, Sec. 1126 et seq., R. S. Mo. 1939, and the same sections in Mo. R. S. A. Plaintiff sought a declaration of its right to a valid driveway easement over a strip of ground ten feet in width leading from Harrison Street to the rear door of its store at 3124-28 Troost Avenue in Kansas City, Missouri, under a lease duly executed by Shankmans and recorded in 1928, and to declare that Shankmans were liable for all damages, expenses and costs incurred by plaintiff on account of Shankmans' breach of warranty of lawful title and covenants for quiet enjoyment contained in said lease; and also to declare that the title of Mildred Godfried, who claimed to be

owner of the ground in question, was subject to the driveway easement.

The case has been before two different divisions of the circuit court. It was first assigned to Division No. 9. While the case was pending there and on May 9, 1945, defendants Shankman presented the following motion: "Defendants Shankman pray the court to dismiss them from this case,—otherwise to add Helen E. Blond as a party to this case,—for reasons stated in the Shankman answer heretofore filed." The Shankman answer then on file recited that they had conveyed all of their interest in the lease in question to Helen E. Blond. The proceeding before the court in reference to the hearing and disposition of this motion is shown by a bill of exceptions signed by the judge and submitted with the transcript tendered by Kresge, to which counsel for Shankmans refused to agree. From said bill of exceptions it appears that on May 18, 1945, in the presence of the attorneys for all the parties, the motion was presented and submitted to the court by the respective attorneys for Kresge and for Shankmans on the pleadings and documents therein referred to with arguments and briefs thereon, each side stating that the allegations of fact made in its pleading were true statements of facts as they occurred. After taking the matter thus submitted under advisement the court, on June 27, 1945, entered the following order and judgment:

"Now on this day defendants Morris Shankman and Agnes E. Shankman's motion to dismiss cause as to them is by the court sustained.

"WHEREFORE, it is ordered and adjudged by the court that this cause be and the same is hereby dismissed as to defendants Morris Shankman and Agnes E. Shankman.

"The separate motion of said defendants to make Helen E. Blond a party defendant herein is by the court overruled."

Plaintiff filed its motion for a rehearing and for a new trial and to set aside the order of June 27 dismissing defendants Shankman as parties, and upon said motion being overruled plaintiff appealed to this court with the result shown in S. S. Kresge Company v. Shankman et al., 194 S. W. (2d) 716. The appeal was premature and was dismissed because there was no final judgment rendered in the case disposing of all the issues and the parties thereto.

Thereafter, and on July 1, 1947, the case was set for trial and was heard before the judge of Division No. 6 upon the pleadings on file and upon the evidence then introduced. The trial was conducted as though the case presented merely a contest between plaintiff and defendants Godfried. However, Shankmans' attorney took part in the trial and stated that he did so at the request of Godfrieds' counsel, and in cooperation with them, because of his familiarity with the facts in the case. He also testified as a witness. At the conclusion of the evidence the case was taken under advisement and the court announced

he would decide the case on July 7, 1947, and on that day the finding and judgment of the court were entered. The court found "that Morris Shankman and Agnes E. Shankman, his wife, are no longer in, or parties to this case having been dismissed therefrom by order and judgment upon June 27, 1945 of another division of this court at that time having jurisdiction of this case." The court further found all issues in the case against the plaintiff and in favor of defendants Godfried. It was ordered and adjudged that the plaintiff does not now possess any easement or any right, title or interest of any kind in, to or concerning the lands described; and that said Mildred Godfried is the owner of said lands free and clear of any and all easements, rights and claims of said plaintiff. There was no finding or judgment of any character in reference to the rights of plaintiff as against defendants Shankman, or as to the liabilities of defendants Shankman.

Plaintiff adopted by reference its motion theretofore filed in Division No. 9 for a rehearing and for a new trial and to set aside the order of June 27, 1945 dismissing defendants Shankman as parties, and claimed error on the part of the court in dismissing plaintiff's petition as to defendants Shankman. Other reasons for a new trial were also assigned which are unnecessary to notice at this time. The motion was overruled, and in due time plaintiff filed its notice of appeal from the judgment entered July 7, 1947 in Division No. 6, and from the interlocutory order and judgment of Division No. 9 entered June 27, 1945.

The case is properly here for review. Elaborate briefs have been presented in behalf of all the parties to the action. It is at once apparent that there are two distinct branches of the case as disclosed by the separate briefs filed by defendants Shankman and by defendants Godfried. It is likewise apparent that there are two dominant questions for decision. First, can the judgment in favor of Godfrieds be sustained; and second, was it error on the part of the court to dismiss Shankmans from the case and fail to declare the rights and liabilities existing between them and the plaintiff?

Preliminary to a consideration of these questions and for a statement of the issues made by the pleadings, and for a better understanding thereof, reference will be made to certain undisputed documents, dates, and the relationship of certain personalities connected with the case. On March 27, 1925, the land involved in this litigation was owned by Abraham Rosenfield and Isidor Adler. On that date the property was sold to M. H. Cohen who executed a purchase money mortgage to Grant I. Rosenzweig, trustee for bearer, securing a note for $75,000 due in ten years, and a second mortgage securing a note for $25,000.

February 23, 1928, Cohen conveyed to Shankman and his wife the same property subject to the mortgages aforesaid. There does not appear to have been any personal assumption of the payment of the mortgages by Shankman and his wife. The property conveyed to

Shankmans consisted in part of two different lots or tracts of ground fronting on Troost Avenue, and other tracts of ground west of these tracts extending to Harrison Street. On June 26, 1928, Shankmans leased one of the lots fronting on Troost Avenue to the Kresge Company. The lot so leased does not appear to have been covered by the Cohen mortgage at the time. The lease to Kresge included the grant of an easement to Harrison Street over ground which was subject to the Cohen mortgage. February 25, 1939, Shankmans conveyed the Troost Avenue lot, which had been leased to Kresge, to Helen E. Blond and assigned to her the lease heretofore mentioned, and Shankmans' obligations under said lease were assumed by the grantee. In addition to the Cohen incumbrance the Shankmans had executed three other mortgages for large sums of money and granted easements to others.

On January 29, 1941, a judgment was rendered against Morris Shankman for $967.50, with interest from October 24, 1934. In 1941, the Cohen mortgage being in default, the trustee thereunder was requested to foreclose. He did so in the regular manner and on October 24, 1941, delivered his trustee's deed to Adler and his associates who were purchasers at the sale. The owners of the Cohen debt at that time were Rosenfield and Adler's wife, and Adler represented them in the various transactions referred to throughout the case. Adler had control and management of the property until it was finally sold to Mildred Godfried in 1944 for a consideration of $78,000. The date of her deed was March 11, 1944. Documents heretofore referred to were all duly recorded.

The petition alleges the execution of the lease to Kresge dated June 26, 1928, which is attached to and made a part of the petition; that plaintiff has performed and is discharging all of its obligations and covenants under said lease and is operating a store on the leased premises. Various provisions of the lease are set forth which call for an easement over the ground in question, warranty of title, and covenants for free enjoyment of the premises devised without molestation or hindrance of any person whomsoever. It is next alleged that defendants Godfried now assert a claim of ownership of the land subject to such easement and claim that plaintiff has no right, title or interest therein; that they claim the right to exclude plaintiff therefrom and are about to so do; that they assert such rights because of and under a purported foreclosure of the Cohen deed of trust; that they claim as grantees from Adler and Rosenfield by deed dated March —, 1944, conveying other lands and the land subject to said easement. It is asserted that plaintiff relied upon the covenants and warranty in the lease and had no knowledge or information of the existence of the deed of trust or of any alleged sale thereunder. It is further charged that the alleged foreclosure of the Cohen deed of trust was specious and colorable; that by arrangement between defendants Shankman and

Adler, the Shankmans' right, title and interest and equity of redemption in said real estate was not foreclosed and sold, but was retained for the benefit of Shankmans, and that this was done with knowledge on the part of defendants Godfried. The contracts, agreements, and transactions by which Mildred Godfried became purchaser and acquired title to the property in question for a consideration of $78,000 are then set forth. Extended and repetitious statements in the petition charge in effect that all defendants joined in a series of transactions to conceal the real transaction between Adler and Shankmans with unlawful intent and for the purpose of attempting to defraud plaintiff of the easement rights conveyed and warranted to it by Shankmans' lease. The court was requested to exercise full jurisdiction in the premises and declare by judgment and decree the rights, duties, and liabilities of the parties plaintiff and defendants under said lease and in and to said easement and the rights of user thereof.

The separate answer of defendants Godfried admits the execution of the lease mentioned in the petition, but denies that plaintiff performed and is discharging all of its obligations and covenants under said lease. The provisions of the lease recited in the petition are admitted, and it is also admitted that defendants Godfried now claim ownership of the easement land and assert that plaintiff has no right, title or interest or right of user thereof; that they claim the right to oust plaintiff and to exclude plaintiff therefrom and are about to do so. It is admitted that Godfrieds' claim of good title is based upon the foreclosure proceeding of the Cohen mortgage as alleged in the petition. It is denied that there was any redemption by Shankmans of the real estate from the Cohen mortgage. All charges of improper conduct on their part are also in effect denied.

The separate answer of defendants Shankman denies generally every allegation in the petition. The answer specifically denies that an actual dispute and controversy exists between plaintiff and these defendants and alleges the fact to be that they are not parties to any controversy referred to by plaintiff; that they have taken no part therein and are not proper parties to this case; that they have neither title, power nor ability to terminate or continue the easement claimed by plaintiff, all of such title having ceased in October 1941. The answer then sets forth a description of all the conveyances heretofore referred to. Certain provisions of the Shankman lease are recited together with that portion providing that the lessee, beginning with the eleventh year of the lease and continuing thereafter, agree to pay all real estate taxes and assessments which might be levied or assessed against the demised premises; that the Kresge Company has never paid any taxes upon any of the lands over which it claims an easement. The answer recites the execution and existence of mortgages, deeds of trust, and other liens against the easement property created by Shankmans subsequent to the Cohen mortgage. The trustee's sale and

the conveyance under the Cohen mortgage are set forth, and it is alleged that there were no agreements, understandings, intent or willingness on the part of Rosenfield and Adler that Shankmans should, as against said foreclosure, hold or ever hold any right, title or interest in the mortgaged property; that none of the transactions were designed or intended by anybody as a fraud upon any one; that they were done merely with the idea and for the purpose of protecting the legal title to the property. These defendants pray the court that they be dismissed from the case with their costs or, if not dismissed, that Helen E. Blond be made a party for the reason that she is the sole person responsible to Kresge for its claims on account of the condition of the conveyance from Shankmans to her.

The evidence in the case shows the execution and recording of all conveyances referred to, and they are submitted as exhibits in the case. The document often referred to in the transcript and briefs as the Cohen mortgage was a deed of trust in regular form, with power of sale upon default. Grant I. Rosenzweig was the trustee.

In 1941, preceding and at the time of the foreclosure sale under the Cohen deed of trust, Abraham Rosenfield and Helen Adler were the owners of the Cohen debt. It appears that Rosenfield lived in California and the Adlers lived in Kansas City; that Isidor Adler, husband of Helen, represented the owners of the debt in the various transactions in reference to their interest in the property preceding the foreclosure sale and extending to and including the sale of the property to Mildred Godfried. The balance due on the debt at that time was approximately $59,000. No payments had been made for a considerable period of time, and the debt was long past due and in default. Adler demanded that regular payments be made. Shankman called upon him and reported that he had lost a large sum of money on the property; that he had been unable to find a purchaser of the property; that he could not carry the load any longer or make any further payments, and that he was willing to deed the property to Adler to save the expense of foreclosure. Adler referred the matter to his attorney who examined the title and reported to Adler that he could not take a deed from Shankman or make an arrangement of any kind with him on account of the various liens and incumbrances then outstanding, which consisted of three mortgages, three easements, and the judgment against Shankman heretofore referred to. Adler so reported to Shankman and advised him that reliance would be placed solely upon the mortgage which would be foreclosed. The foreclosure proceeded and at the sale Adler bid in the property and received the trustee's deed conveying the property to Abraham Rosenfield and Helen Adler. The property so sold consisted in part of a lot or tract of ground on Troost Avenue immediately south of and adjoining the lot which had been leased to Kresge. The lot contained a building of several stories and was occupied by half dozen or more tenants. Adler

took possession of the property but desired to be relieved of the burden of looking after it which required constant attention. Shortly after the sale he engaged Mr. Shankman to act as his agent in operating the property. Shankman accepted such employment and acted as the agent of Adler in the management of the property, the collection of rents, payment of taxes and other necessary expenses, and accounted to Adler therefor. Such arrangement continued for approximately three years and until the sale of the property to Mildred Godfried. Adler was greatly desirous of disposing of the property and made repeated efforts for a considerable period of time to find a purchaser at a price adequate to pay the remaining amount of the debt. Not being able to find a purchaser, Adler then proposed to Shankman that he might recoup some of his losses if he would find a purchaser for the property on terms and conditions satisfactory to Adler; and that if he procured such a purchaser before Adler disposed of the property himself, he might have the excess of the purchase price over and above the amount due on the debt.

Gilbert Godfried, the husband of Mildred, was one of the tenants in the building on the property. His father-in-law on a visit here became interested in the property and proposed to furnish his daughter sufficient money to enable her to purchase it. Mr. Godfried made inquiry of Mr. Shankman who referred him to Adler for the price and terms of sale. After conferences, Godfried and Adler agreed upon a price of $78,000 for the property, $38,000 to be paid in cash and the remainder to be represented by two notes for $20,000 each, payable to bearer and secured by a deed of trust. A down payment of $5000 was placed in the hands of a real estate agent. Adler was unwilling to have the owners make a deed for the recited consideration of $78,000 because of the possibility of being required to pay income tax on the excess of the purchase price over and above the amount due on the debt which was to go to Shankman. Adler also insisted that the down payment of $5000 be in his hands before he would sell the land. It was transferred to him, and he then decided that the title should be conveyed to Mrs. Godfried through an intermediary. The contract was rewritten, in which it was agreed that the owners would convey the property to Gussie Kort, whom Adler had procured for the purpose of making the sale, for a consideration of $57,670.42; that Gussie Kort would then make and execute a deed of trust on the property securing two notes for $20,000 each, and that she would convey the property to Mildred Godfried for a consideration of $78,000, which would consist of $38,000 in cash and a deed of trust securing the two notes for $20,000 each executed by Gussie Kort. The transaction was carried out in this manner; all parties, including Mrs. Kort, being represented by their individual counsel. This contract was dated January 27, 1944, and was immediately assigned by Gussie Kort to Mildred Godfried. Gussie Kort was the mother-in-law of Mr. Shankman, and Adler selected her

as a conduit of title so that she could receive and hold for Shankman the excess of the purchase price which was to be paid to him. After the sale was completed, Shankman purchased from Adler the two $20,000 notes which Mrs. Godfried later paid in full. Adler took the position that the purchasers at the foreclosure sale would not make a general warranty deed against all outstanding Shankman obligations if controversy over them should arise, but would warrant that they had and would convey good title to the purchaser. On account of this position, Mrs. Godfried's attorney demanded a policy of title insurance which was duly furnished.

Shortly after the transfer of the property to Mildred Godfried, she wrote a letter to the Kresge Company in which she stated that she had bought the building adjoining the Kresge store and also the ground in the rear thereof over which Kresge had a driveway, and that such driveway privilege had been terminated by the foreclosure. The letter concludes: ''Since I bought and paid for the ground and also pay taxes on it, I feel that I am entitled to some revenue if your store is to continue using my driveway. I believe that $10.00 a month for the use of it would be fair for both concerned.'' Thereafter Kresge wrote to Mr. and Mrs. Shankman, enclosing a copy of Mrs. Godfried's letter and notifying them of her imminent intention to barricade the driveway. The letter demanded performance of the covenants for the protection of the driveway contained in the lease, and stated that the Kresge Company would institute appropriate proceedings if Shankmans failed to do so and would hold them liable for loss, damages, and expenses incurred.

The transactions among all the parties as heretofore recited were fully detailed and described in the testimony of Mr. Adler and Mr. Rosenzweig, his counsel, and in the testimony of Mr. Rosenberg, the attorney for Mrs. Godfried.

Plaintiff offered in evidence the deposition of Mr. Godfried for the purpose of establishing certain admissions. His testimony was to the effect that he acted for his wife in handling all of the negotiations for the purchase of the property; that he took care of the business affairs of Mrs. Godfried, and that she did not have any direct connection with it. He stated that he knew the Kresge Company was using the right of way in question and that Woolworth and others also used it; that he did not know anything about the Kresge lease; that he heard of the foreclosure proceeding, and that Shankman told him about it; that Mr. Adler explained to him why the contract was made with Mrs. Kort and that all he wanted to collect was the amount due on the debt, and that anything else went to Shankman. He further testified that he was a tenant in the property and when he made inquiry about the property, Shankman referred him to Adler.

Mr. Rosenberg examined the title for Mrs. Godfried and testified that the Kresge lease showed up in the abstract; that he mentioned it

in his opinion, in which he stated that it was cut out by the foreclosure. Reference to provisions in the Kresge lease and other evidence may be made if appropriate in the course of the opinion.

We shall consider first the insistence of appellant that the court erred in its finding and judgment in favor of Godfrieds and against the plaintiff. It is contended in various subdivisions of the brief that Godfrieds purchased with notice of and subject to the driveway easement; that they are estopped to claim through the Cohen mortgage that Adler's agreement with Shankman was a contract for him to redeem the property; that the title conveyed to Godfrieds was subject to Kresge's prior grant.

To begin with, a question of paramount importance is the legal effect of the foreclosure proceeding upon the claim of plaintiff to an easement under the Shankmans' lease. Under our system of deeds of trust, the trustee's sale operates as a complete foreclosure and cuts off a second deed of trust as completely as if there had been a decree of foreclosure with all parties before the court. Greene v. Spitzer, 343 Mo. 751, 758, 123 S. W. (2d) 57. It is the settled law of this state, and elsewhere, that the foreclosure of leased premises under a mortgage antedating the lease nullifies and extinguishes the lease, and whenever the estate which the lessor had at the time of making the lease is defeated or determined, the lease is extinguished with it. The conveyance under foreclosure passes title to the purchaser as of the date of the mortgage and uproots any contract of lease or other incumbrance made by the mortgagor subsequent to that date. The law is thus declared in Roosevelt Hotel Corp. v. Williams, 227 Mo. App. 1063, 1066, 56 S. W. (2d) 801, with the citation of ample Supreme and appellate court decisions.

The appellant does not question that the law is otherwise than as thus stated, but contends that the doctrines of the cases cited are foreign to this case because Shankmans did not disclose nor purport to make the lease subject to the Cohen mortgage, and they thereby became obligated to pay the Cohen mortgage for the protection of Kresge. The further contention of appellant in this connection is based upon the assumption that the transactions between the parties amounted to a redemption of Shankmans' equity. Among other authorities, appellant cites Brown v. Evans, 182 S. W. (2d) 580, as authority to support its contention that Godfrieds purchased with notice of and subject to the driveway easement. It is unnecessary to prolong this opinion by a detailed analysis of that case, and we dismiss it with the observation that it is not in point under the facts in the pending case and does not lend support to appellant's contention.

It is provided by statutory enactment, Sec. 3462, R. S. Mo. 1939, Mo. R. S. A., that all sales under mortgages with power of sale "shall be valid and binding by the laws of this state upon the mortgagors, and all persons claiming under them, and shall forever foreclose all

right and equity of redemption of the property so sold.'' We think the necessary conclusion from the foregoing is that the purchasers at the foreclosure sale acquired good title to the property sold, free and clear of the Kresge easement and all other liens and incumbrances upon the property which were subsequent to the Cohen mortgage. They had good right to sell and convey the property upon any terms acceptable to them. The property was effectively conveyed to Mildred Godfried who acquired good title thereto free from all incumbrances created by Shankmans upon it, including the easement rights of plaintiff.

We have not overlooked the contention of appellant that the agreement and transactions between Adler and Shankmans amounted to a redemption of the property by Shankmans which inured to Kresge under Shankmans' lease, and that the trustee's deed was thereby invalidated; and the further contention that the foreclosure sale was not in good faith, but was a mere pretense and amounted to a scheme to conceal the real purposes of Adler and Shankmans and to deprive Kresge of its rights in the lease, all with knowledge and cooperation on the part of Godfrieds. Under the facts and circumstances heretofore related such contentions are without merit and deserve but slight consideration. It will be recalled that the foreclosure in this case occurred in 1941. All of the transactions leading up to the purchase of the property by Mildred Godfried occurred early in 1944, almost three years after the foreclosure. There is no showing of any attempt on the part of Shankmans to take steps to redeem the property in a statutory or other manner. It appears to be the theory of appellant that because Adler had agreed with Shankman that he might have a certain sum of money for procuring a purchaser, the mortgage was revived. There was no mortgage to be revived at that time and if the Cohen mortgage had been revived, as appellant contends, all other liens created by Shankmans would likewise have been revived. It is wholly unreasonable to say that it was the intent and purpose of Adler to create any such revival. There is no evidence of any fraud perpetrated by Adler and his associates against the interest of plaintiff and none in which Godfrieds could participate, nor was there any sufficient plea of fraud.

In the hearing of Shankmans' motion to dismiss them from the case, plaintiff's counsel stated among other things that no charge of fraud was being made or intended by Kresge against Adler and Rosenfield, and that on the contrary their conduct throughout had been exceptionally fair and commendable. On the trial of the case in Division No. 6, plaintiff's counsel admitted making such statement, but objected to it as being irrelevant and immaterial. We think the statement is material, especially in reference to the interpretation of the petition wherein plaintiff now claims that the issue of fraud was raised in the case. If there was no fraud on the part of Adler, there

was certainly none in which Godfrieds could participate. The fact that Adler insisted that the conveyance to Mildred Godfried be made through an intermediary in order to avoid the possibility of income tax which might be assessed if the owners made a direct conveyance for the full purchase price is no indication of fraud. The use of a straw party in transferring real estate is not in itself unlawful or fraudulent. Benton v. Alcazar Hotel Co., 352 Mo. 836, 180 S. W. (2d) 33. Mildred Godfried was a *bona fide* purchaser. The judgment of the court against plaintiff and in favor of defendants Godfried was right and should be affirmed.

The next matter for consideration is the interlocutory order of division No. 9, dismissing Shankmans from the case. That order is now properly here for review after final judgment as determined in the prior appeal. Sec. 126 Civil Code of Missouri, Laws 1943, p. 390. The propriety of that order was properly raised in the motion for a new trial before the judge who last heard the case, but to no avail. We are convinced that the order dismissing Shankmans from the case was error and that in a declaratory judgment action the court should have proceeded to declare the rights of plaintiff and the obligations of Shankmans under their lease granting plaintiff an easement, on account of a breach of warranty and the covenants contained in said lease. The criteria for the grant of a declaration are present in this case. There is no doubt that there was an existing controversy, and that Shankmans were parties thereto. However, there is doubt as to the practical utility of the declaration sought. Declaratory relief is all that could be afforded in this case. Such relief without executory relief is an extraordinary remedy to which the discretionary powers of courts of equity could be applied. Whatever plaintiff's rights are found to be, it will be necessary for plaintiff to enforce liability by a separate suit at law in which either party would be entitled to a jury trial. State ex rel. v. Terte, 351 Mo. 1089, 1099, 176 S. W. (2d) 25; United States Fidelity & Guaranty Co. v. Koch, 102 F. (2d) 288, 294.

When the case was first presented to the circuit court the judge, in the exercise of his discretionary powers, might have properly refused to take and exercise jurisdiction for the reason that a mere declaration of rights and obligations would not terminate the controversy giving rise to the proceeding. Sec. 1131, R. S. Mo. 1939, Mo. R.S.A.; Liberty Mutual Insurance Company v. Jones, 344 Mo. 932, 954, 130 S. W. (2d) 945. But having assumed jurisdiction, and in the exercise thereof, it then became the duty of the court to make a declaration of the rights of the parties. The very purpose of a suit of this character is to secure a judicial construction of the statute and the extent necessary to determine how it applies to the facts of the controversy involved and a declaration of rights under such construction. Smith v. Pettis County. 345 Mo. 839, 843, 136 S. W. (2d) 282;

King v. Priest, 206 S. W. (2d) 547, 551. Under the foregoing authorities the court erred in sustaining Shankmans' motion to dismiss and in failing to enter a judgment declaring the rights of plaintiff. Shankmans' answer and the evidence on the motion show conclusively that there had been a breach of warranty and of covenants contained in the lease to Kresge; that the Cohen mortgage was a lien, but was not excepted in the lease; that Shankmans defaulted in the payment of the Cohen debt, foreclosure followed, and there was a failure of Shankmans' title. Substantial damage may be recovered when possession is disturbed by title paramount for breach of a covenant for quiet enjoyment. Clough v. Securities Reserve Corporation, 153 S. W. (2d) 93, 97. A covenant against incumbrance is embraced in a general warranty clause and imposes a duty upon the grantor to pay off and discharge all prior liens and incumbrances which are not expressly assumed by the grantee. City of Beaumont v. Moore, 202 S. W. (2d) 448 (Tex.). Knowledge of the grantee of a prior deed of trust was no defense for a breach of the warranty against incumbrances. Dudley v. Waldrop, 183 S. W. 1095, 1098. Many other cases hold that a covenantor is liable in damages for a breach of covenant and for failure to protect against prior incumbrances. Jackson v. Sewell, 284 S. W. 197; Laswell Land & Lumber Co. v. Langdon, 204 S. W. 812; Smith v. Nussbaum, 71 S. W. (2d) 82, 87, and cases cited. See Annotation 61 A.L.R. p. 154. The legal responsibility for the non-fulfillment of a covenant is that the party violating it must respond in damages. 21 C.J.S. sec. 94, p. 950. A covenant of warranty has been defined as an undertaking to compensate the grantee in money if the title fails. 21 C.J.S. sec. 47, p. 917.

The lease to Kresge, in addition to a recital of warranty of good title and right to make it and covenants of quiet enjoyment, contains this provision:

"If at any time during the term hereby demised, the title of the Lessor shall fail or be discovered not to enable him to grant the term hereby demised under the provisions herein set out the Lessee shall have the option to annul and avoid this lease, and thereafter no rent shall become due or payable to the lessor."

Counsel for Shankmans contend, in effect, that this provision of the lease provided an exclusive remedy for the plaintiff and that a claim for damages cannot be maintained. Such contention is untenable and cannot be supported under the law. Plaintiff was not limited to an abandonment of the lease, but might make its election of remedies to abandon the lease or to sue for damages. Hiatt Investment Co. v. Buehler, 225 Mo. App. 151, 163, 166, and authorities cited, 16 S. W. (2d) 219.

It is also contended that the claim of plaintiff is contrary to equity because plaintiff failed to make Helen Blond a party so that Shank-

mans' rights against her could also be determined without an additional suit; and that plaintiff had failed to meet its obligation in the payment of taxes in accordance with the provisions of the lease. Most of the points in the Shankman brief are based upon equitable grounds and the argument in the main treats the proceeding as one in equity. Of course, such is not the case. A proceeding for a declaratory judgment is *sui generis* and is neither strictly legal nor equitable as our courts have often declared. Maxwell v. Andrew County, 347 Mo. 156, 166, 146 S. W. (2d) 621; Strype v. Lewis, 352 Mo. 1004, 1007, 180 S. W. (2d) 688.

We have not slighted the brief but have fully considered it, and do not find any authority contrary to the conclusion which we now reach that Shankmans were proper parties; that plaintiff was entitled to a declaration of its rights against them. The order dismissing Shankmans from the case should be set aside and Mr. Shankman having died, Agnes E. Shankman, as administratrix of his estate, should be substituted as a party and the court should declare the rights of plaintiff against her individually, and against the Shankman estate. The judgment in favor of defendants Godfried should be affirmed, and the order dismissing defendants Shankman should be reversed and the cause remanded as to them for further proceedings in accordance herewith. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment in favor of defendants Godfried is affirmed, and the order dismissing defendants Shankman is reversed and the cause remanded as to them for further proceedings in accordance with this opinion. All concur.