C. M. McCULLOUGH and Muriel McCullough, d/b/a Adams Fuel Company, and Tumoco, Inc., a corporation, Plaintiffs-Respondents,

v.

BEATTY OIL COMPANY, a corporation, Defendant-Appellant.

No. 32850.

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

"Action to Cancel Lease and for Possession", plaintiffs by their Amended Petition prayed for possession of the leased premises, damages in the sum of $5,000.00 for the wrongful holding over of the leased premises, and for $1,350.00 due on open account plus interest from December 1, 1964. The defendant-appellant [1] filed a Second Amended Counterclaim [2] in which it prayed judgment against plaintiffs on Count I for $2,113.30 representing the net amount allegedly due defendant on the fuel and equipment accounts between the parties. On Count II of the counterclaim defendant seeks damages of $6,200.00 for breach of the lease and conversion of defendant's property.[3]

Following a trial by the court without a jury, the court entered judgment in favor of plaintiffs for possession of the leased premises and decreeing that the lease be cancelled and awarding plaintiffs judgment in the sum of $1,350.00 on their claim "in open account". The court entered judgment in favor of defendant on Count I of its counterclaim for petroleum products left in the tanks in the amount of $237.13 and on Count II in the sum of $1,200.00.

C. M. McCullough and Clare Beatty were the only witnesses to testify. McCullough and his wife Muriel, d/b/a Adams Fuel Company, together with their wholly owned corporation, Tumoco, Inc., were plaintiffs, while Beatty was president and owner of defendant Beatty Oil Company.

Most of the facts are not in dispute. In October of 1961 the McCulloughs were in the fuel business operating under the name of Adams Fuel Company in Jackson, Missouri. Through Tumoco, Inc. they owned or leased certain real estate in Jackson on which Tumoco, Inc. operated a service station and on which were situated bulk

Vogel & Frye, Cape Girardeau, for defendant-appellant.

Limbaugh, Limbaugh & Russell, Cape Girardeau, for plaintiffs-respondents.

PER CURIAM.

Defendant Beatty Oil Company appeals from a judgment of the Cape Girardeau Court of Common Pleas. This action arises out of a lease entered into between plaintiffs as lessors and defendant as lessee of a certain "bulk plant" located in Jackson, Missouri. Although denominated an

---

1. For convenience we will hereafter refer to appellant as defendant and respondents collectively as plaintiffs.

2. The second amended counterclaim will hereafter be referred to as counterclaim.

3. Defendant's Second Amended Counterclaim was filed by leave on July 11, 1966, over a month after the trial allegedly "to conform to the proof adduced at the trial".

fuel tanks. Plaintiffs also owned a large number of gas tanks which they loaned to customers to whom they supplied fuel.

On October 21, 1961 plaintiffs and defendant entered into a ten year lease agreement wherein plaintiffs leased to defendant the "bulk plant in the City of Jackson." Defendant agreed to a rental of .2¢ (two-tenths cent) per gallon of "thru-put" payable monthly on the fuel taken from the bulk plant. In addition defendant agreed to pay an additional .1¢ (one-tenth cent) per gallon "thru-put" to be credited on the purchase price of certain equipment (mainly gas tanks installed on customers' premises and loaned to them) sold by plaintiffs to defendant. Defendant agreed to supply Tumoco, through direct lines from the bulk-plant tanks, with gas for a service station operated by Tumoco at .2¢ (two-tenths cent) over market price, which amount would go to offset the rental. The lease also provided that plaintiffs, in addition to the five 16,000-gallon tanks presently installed, would supply defendant with a minimum of three additional tanks to be installed at plaintiffs' expense, a loading dock and pumping equipment, a warehouse, tank truck and telephone answering service. Plaintiffs agreed to provide "normal maintenance and appearance of the facilities." Tumoco, Inc. agreed to purchase from Pure Ice Company one 16,000-gallon tank and two 10,000-gallon tanks and have them installed at plaintiffs' expense. Tumoco, Inc. agreed to turn over to defendant all its present petroleum customers with one exception and to assist defendant in retaining all of these customers. The lease provided that in the event defendant defaulted in the payment of rent the lease was to be "cancellable at the option of the lessors." There were various other provisions of the lease none of which are deemed relevant to the issues on trial.

A list of the equipment sold to defendant was set forth on plaintiffs' Exhibit 2 and according to McCullough the agreed price was $3,050.00, which amount included a 1953 GMC truck. McCullough testified that as provided in the lease he purchased an additional 16,000-gallon tank and two 10,000-gallon tanks from Pure Ice Company and had them installed. He also had three new 3,000-gallon tanks installed. They were all installed by January, 1962. The only tanks ever used by defendant were the original five 16,000-gallon tanks and the three 3,000-gallon tanks. In 1966 McCullough sold the six additional tanks which cost him $6,000.00 for $2,200.00.

Defendant in October, 1961 took over the customers and began servicing them through a commission agent named Lou Powers and a salaried employee named Si Martin.

The parties continued to operate under the lease until November 9, 1964 without apparent difficulty. On that date Tumoco, Inc. was served by the Internal Revenue Service with a Notice of Levy arising out of an alleged $18,687.30 due from Beatty Oil Company for taxes. According to McCullough on that date an agent of the Internal Revenue Service placed padlocks on the storage tanks. The levy was released some four days later by "Release of Levy" dated November 13, 1964. The events which transpired after the service of the Notice of Levy give rise to this litigation.

McCullough stated that after the service of the levy Beatty came to him and offered to sell him the solvent business for $10,000.00. He said he told Beatty, "If you can prove that you are sole owner of this equipment, then I will talk to you further." Beatty said that after the levy was made he told McCullough and his wife that he would be able to serve his customers and did not want to do anything that would in any way adversely affect them. He also said about an hour later he got a call from an attorney that they (presumably the McCulloughs) were in his office and wanted the bulk plant, and that the day after the levy he met with McCullough and Powers in McCullough's office and McCullough told him that he and Lou were going to start business on their own and Lou told

him he was quitting and going to work for McCullough.

The lines from the bulk plant to the Tumoco service station were not affected by the levy and McCullough continued to pump gasoline from Beatty's tanks. He did this for ten days or two weeks and then disconnected the lines and installed his own equipment. He never bought gasoline, kerosene or fuel oil from Beatty Oil Company after that.

According to McCullough, Si Martin, Beatty's employee, continued to pump fuel out of the tanks until they were empty which was about January, 1965. Since that time there has been no "thru-put" from the leased tanks. He received no rentals after March, 1965. On February 18, 1965, he had a notice of cancellation of lease and demand for possession of the premises served upon Beatty Oil Company for non-payment "in full" of the rental for January, 1965. Possession was not surrendered. McCullough said he offered to purchase back the equipment loaned to customers on condition that Beatty could show he was the sole owner. He said Beatty made no reply to the offer.

McCullough admitted that on the day of the tax levy Lou Powers quit Beatty and according to McCullough he furnished the money for Powers to stay in business and service his customers. He borrowed money and set up a new bank account in which Powers would deposit collections, although he could not remember in whose name the account was set up. He told Powers to make sure that Beatty "doesn't touch any equipment that he owes me for," referring to the equipment in customers' possession. He conceded that he had no lien or mortgage on the equipment nor any ownership of it, other than the balance due on open account. Billings to customers by Powers were on invoices of Tumoco Oil which McCullough stated he had left over and he gave them to Powers to use. Customers would bring in payments to Tumoco, Inc. which McCullough receipted for and turned over to Powers. Powers would

place the receipts in the special bank account on which McCullough wrote most of the checks. Powers serviced Beatty's former accounts from November, 1964 to October, 1965 when he had a heart attack.

According to McCullough defendant did not owe him any rent at the time of the levy and he estimated that Tumoco was indebted to defendant for merchandise purchased for about $100.00. Defendant claimed the amount due to be $368.10. The court, over defendant's objections, permitted McCullough to offer into evidence Exhibit 5 prepared by Mrs. McCullough, showing a balance due from defendant on the equipment purchase of $1,237.20. In support of his claim for damages for wrongful holding over of the leased premises McCullough testified that the average rental from "thru-put" would be approximately $60.00 per month. He claimed damages for loss of rent from January, 1965 to the time of trial at rate of $60.00 per month and a loss in the sale of six tanks previously purchased of $3,800.00, the difference between his cost of $6,000.00 and his recovery on sale of $2,200.00. McCullough disclaimed any interest in additional equipment sold to defendant and listed on defendant's Exhibit B, which included various items of equipment loaned to customers, the purchase price in the sum of $1,380.06 which was fully paid by defendant through a credit memo to Tumoco, Inc. McCullough agreed that it is customary in the petroleum business for a purchaser of a bulk operation to pay for the petroleum left in the tanks at the time of sale, although it could not be removed or used. Defendant had paid him for the petroleum in the tanks when he took over the bulk plant. Beatty claimed $237.13 for the value of petroleum left in the tanks.

Beatty Oil Company has not handled the sale and distribution of any petroleum products since March of 1965 and has not used the bulk plant except for storage purposes since that date. Beatty Oil Company did not pay its franchise tax in 1965 and has not been operating since July, 1965. Beat-

ty was, at the time of trial, operating through a new corporation, Petro Solvents Company. Beatty agreed that no products were put in the tanks after December, 1965. He stated, however, that products were continued to be removed until the irreducible minimum was reached and that rent was paid by credit memos to plaintiffs until June, 1965. Beatty calculated that his company lost profits based on commissions paid Powers during the ten months after November 9, 1964, equal to a minimum of $8,000.00 per year from which would have to be deducted administration expenses of $1,500.00 to $2,000.00. Beatty conceded that as of the date of the tax levy he owed plaintiffs $1,565.00 balance on equipment purchased. He estimated defendant lost in the neighborhood of six service station accounts, fifty fuel oil accounts and fifty farmers' accounts which were taken over by Powers, but that he continued to service about eighty accounts which were not originally obtained from plaintiffs.

■ Whether this is an equitable action to cancel a lease and for an accounting, an action at law for unlawful detainer and damages, an action for breach of contract, one for damages arising out of conversion of personal property, or damages for conspiracy to deprive defendant of his business, or a conglomeration, need not long detain us. A jury was waived and whatever the form of action we review the record de novo both on the facts and the law. Civil Rule 73.01, V.A.M.R.; Schlanger v. Simon, Mo., 339 S.W.2d 825 1. c. 828; DeBow v. Higgins, Mo., 425 S.W.2d 135, 140; Bowers v. Spinaio, Mo.App., 421 S.W.2d 790, 792.

Defendant first complains that the court erred in cancelling the lease and ordering defendant to deliver up possession of the premises to plaintiffs for the reason that under the evidence no rent was due. On November 9, 1964, the date of the tax levy, and at the time of trial, not only was there no rent due plaintiffs from defendant but in fact plaintiff Tumoco, Inc. by its presi-

dent's admission was indebted to defendant for at least $100.00 on open account.

■ The only evidence of delinquency in rent payments was McCullough's statement that the credit memos in payment which were due on the 10th of the month were "sometimes delayed as long as twenty days." Plaintiffs at no time complained of the delay. We do not believe this evidence sufficient to support the Notice of Termination for non-payment of rental in full for January, 1965 which was served on defendant on February 18, 1965. Forfeiture of a lease for violation of a covenant is not favored by the courts and a covenant permitting forfeiture, including one for the non-payment of rent, will be strictly construed against the party invoking it. Independence Flying Service, Inc. v. Abitz, Mo., 386 S.W.2d 399, 404. Since under the lease the only right of termination granted plaintiffs was for default in payment of any rent, we find that the attempted termination was invalid.

■ Plaintiffs contend nevertheless that the trial court's judgment ordering possession should be sustained because they pleaded and proved that there was an abandonment of the premises by defendant. The evidence does not establish an "abandonment" in the legal sense. There was no act on the defendant's part evincing an intent to abandon the premises nor on the plaintiffs' part to resume possession as a result thereof. Mullaney v. McReynolds, 170 Mo.App. 406, 155 S.W. 485; Ruddy Realty Co. v. Woolf Cement Co., Mo.App., 200 S.W. 302, 303. We have reached the conclusion that on and after July, 1965 defendant was in fact prevented from continuing to use the leased premises as contemplated under the lease. It is our finding, under the evidence, that this situation was brought about by the deliberate and wrongful breach by McCullough of his obligations under the lease with defendant. Defendant was not in default under the lease on November 9, 1964, when the tax levy was served on McCullough. That levy

lasted at most four days. Even during that period Tumoco, McCullough's corporation, was able to obtain gasoline from the padlocked storage tanks. Under the evidence, the only conclusion that can be reached is that McCullough seized upon the levy as an occasion to take back the customers and equipment he had sold defendant, and through defendant's former commission agent Powers, undertook to re-establish himself in the fuel business. He borrowed money to lend to Powers, set up a bank account on which he drew checks, and told Powers to tell the customers not to let Beatty take back equipment which he admittedly did not own. Even if we give credence to his protestations that he was merely financing Powers, we point out that under the terms of his lease with defendant he was obligated to "assist in retaining all these customers for Lessee." In addition he was obligated to turn over all future customers to Lessee. Within ten days or two weeks after the levy and after it had been released, he had his service station lines disconnected from the bulk plant and proceeded to set up his own equipment for supplying gasoline, although the lease provided that such gasoline would be supplied by defendant at .2¢ (two-tenths cent) above market so as to offset the rental due from defendant. This was all done prior to the service of any termination notice by plaintiffs and before any breach or so-called abandonment by defendant. We find that defendant's inability to continue to operate under the lease was a direct outgrowth of plaintiffs' breach of the lease. It is true that since July, 1965 Beatty Oil Company has been inoperative and that Beatty has been conducting his business under a new company. Defendant did not in its counterclaim seek any relief other than damages and made no effort to obtain relief which would continue or restore its operating privileges under the lease. Under the circumstances, it was not error for the court to order defendant to deliver possession of the premises to plaintiffs and treat the defendant's counterclaim as one for damages. S. S. Kresge Co. v. Shankman,

240 Mo.App. 639, 212 S.W.2d 794, 804; 51C C.J.S. Landlord and Tenant § 274(1), (2), pp. 711, 712, 713.

■ We now turn our attention to what damages, if any, defendant is entitled to by reason of plaintiffs' breach of the lease. The court entered judgment for defendant on Count I of its counterclaim for $237.13 for petroleum products left in the tanks and on Count II for $1,200.00, apparently for breach of contract. No suggestion is made here, and we find none in the record, as to how the $1,200.00 damage award was arrived at. Although McCullough questioned the accuracy of the ledger sheet (defendant's Exhibit 6 showing an amount due as of December 29, 1964, from Tumoco, Inc. to defendant of $612.54), he was unable to say or establish in what respect it was incorrect. Beatty stated that after December 29, 1964, additional credits were given on the account for rentals for January through April reducing the balance due to $368.10. In addition we believe defendant is entitled to recover of plaintiffs $237.13, the value of the fuel in the tanks which became worthless to defendant by reason of plaintiffs' breach of the lease.

Defendant also claims the court erred in not allowing damages under Count I for conversion by plaintiffs of the tanks purchased and owned by defendant and in the possession of its customers. Plaintiffs assert there was no evidence of a conversion as title to the tanks remained in defendant and they were available to him at any time. This position completely overlooks the fact that McCullough told Powers to tell defendant's customers not to let defendant have any equipment for which defendant still owed him.

■■ The law of conversion is concerned with possession, not title, and its essence is not in the acquisition of the property by the wrongdoer, but in the wrongful deprivation of it to the owner. There need only be some repudiation of the owner's right or some exercise of dominion over it inconsistent with such right. 89 C.J.S.

Trover and Conversion § 3, pp. 533, 534; Milne Lumber Co. v. Michigan Cent. R. Co., Mo.App., 57 S.W.2d 732, 736. We need not, however, decide in this case whether under the evidence plaintiffs converted the tanks and equipment of defendant to their own use since we have heretofore found that plaintiffs breached their contract with defendant and prevented defendant from continuing to service its customers who were in possession of its tanks and equipment. Defendant is entitled to recover the market value of the equipment as damages under the breach of the lease, as it was clear under the evidence that defendant could not in fact seek removal of the equipment from the customers whose future good will it was in its interest to undertake to maintain. We do not believe that the value of the equipment sold to defendant in October, 1961 would necessarily be evidence of its value in November, 1964. Defendant belatedly recognized this and sought leave of the trial court to reopen the trial to permit it to make proof of the market value in 1964. Such leave was denied. Since we have reached the conclusion, as hereinafter pointed out, that the case will have to be reversed to ascertain defendant's damages on Count II, we believe defendant should at that time be given an opportunity to establish the value of the equipment as an element of damages under Count II of its counterclaim.

■ In Count II of its counterclaim defendant sought damages in the sum of $6,200.00 arising out of the breach by plaintiffs of the lease agreement. We have herein held that plaintiffs did so breach the lease and are accordingly liable to defendant for such damages as properly flow therefrom. In support of such damages Beatty testified that his company lost net profits of $6,000.00, presumably for the period November, 1964 through September, 1965 when McCullough and Powers took over his accounts. This was arrived at through Beatty's calculations that he grossed two times the commissions earned by Powers. Powers' commissions for ten

months in 1964 were $4,048.87. Thus defendant's gross loss for the period involved would be $8,097.74. Beatty "estimated" the defendant's annual administration expenses at $2,000.00 per year. We believe the evidence of his profit too speculative to constitute sufficient evidence to support a proper award of damages. Spruce Co. v. Mays, 333 Mo. 582, 62 S.W.2d 824, 828; Wandell v. Ross, 241 Mo.App. 1189, 245 S.W.2d 689, 694. It is true that defendant is entitled to recover his loss of profits if any. We believe the loss must be limited to the total receipts received by Powers and McCullough on fuel and merchandise supplied former customers of defendant during the ten month period November, 1964 through September, 1965, less what the cost of fuel and merchandise sold would have been to defendant and less commissions earned and paid Powers during that period not in excess of the rate of commission paid by defendant when Powers severed his relationship. Since defendant would have been entitled to such gross receipts if plaintiffs had fulfilled their obligations under the lease, we do not believe, under the circumstances of this case, that defendant's damages need be further reduced by administrative overhead unless it appears that such overhead was not, after the breach, actually incurred.

■ We now consider whether the judgment in favor of plaintiffs in the sum of $1,350.00 on open account can stand. This award represents the amount prayed for in plaintiffs' petition. No evidence was offered to support the judgment. According to McCullough no rent was due and plaintiffs were indebted to defendant on open account in a sum of at least $100.00. In their amended petition plaintiffs allege that certain goods and merchandise were sold defendant for $3,050.00 and that there is a balance due thereon of $1,350.00. The goods and merchandise were undoubtedly those detailed on Plaintiffs' Exhibit 2, being the equipment sold defendant, primarily gas tanks and pumps in the possession of customers. These were the tanks which McCullough and Powers allegedly took

over. Under the lease this equipment was to be paid for by "thru-put". Beatty admitted that $1,595.00 was still due therefor when the lease was breached. It is difficult for us to see why defendant should be required to pay for equipment the continued use of which we have held was denied defendant by plaintiffs' breach of their lease. Plaintiffs by breaching the lease and by disconnecting the lines from the bulk plant to their service station effectively cut off a vital source of income to defendant. They destroyed the means and the only method by which defendant, under the lease, was obligated to pay for the equipment. We do not believe that part of the judgment is proper.

The judgment of the trial court in favor of plaintiffs and against defendant on plaintiffs' first amended petition insofar as it awards possession of the leased premises is affirmed, but in all other respects said judgment is reversed and this cause remanded for a new trial as to damages only on Counts I and II of defendant's second amended counterclaim, the costs to be adjudged against plaintiffs.

All concur.