**H.B. OPPENHEIMER & CO., INC., Respondent,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al., Appellant,**

and

**American Council of Life Insurance, Amicus Curiae.**

No. WD 47526.

Missouri Court of Appeals, Western District.

Feb. 1, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1994.

Application for Transfer Sustained May 26, 1994.

Case Retransferred June 20, 1994.

Court of Appeals Opinion Readopted June 29, 1994.

Kent T. Perry, Gregory M. Dennis, Perry, Hamill & Fillmore, L.C., Overland Park, KS, for appellant.

H. Vincent Monslow, Charles J. Schmelzer III, Blackwood, Langworthy & Schmelzer, P.C., Kansas City, for respondent.

Jeffrey P. Ray, James P. Tierney, Lathrop & Norquist, Kansas City, Phillip E. Stano, Richard E. Barnsback, Am. Council of Life Ins., Washington, D.C., for amicus curiae.

Before KENNEDY, P.J., and ULRICH and SPINDEN, JJ.

KENNEDY, Presiding Judge.

The Prudential Insurance Company appeals from a declaratory judgment which held that an office space lease to H.B. Oppenheimer and Co., Inc., which was subordinate to a deed of trust executed by the landlord, was terminated by the sale of the property under foreclosure of the deed of trust. Prudential was the holder of the deed of trust, and was the purchaser at the foreclosure sale.

The case was submitted to the trial court upon a stipulation of facts. Each party filed a motion for summary judgment. The trial court sustained Oppenheimer's motion and overruled Prudential's.

■ Where a case is submitted to the trial court on a stipulation of facts, the Court of Appeals' standard of review is whether the trial court drew the proper legal conclusions from the facts stipulated. *Deutsch v. City of Ladue*, 728 S.W.2d 239, 241 (Mo.App.1987); *Bresnan v. Basic Elec. Co.*, 721 S.W.2d 3, 5 (Mo.App.1986).

■ For reasons hereafter explained, we reverse the judgment and remand for the entry of a new judgment declaring the lease was not terminated.

MLH Properties, Inc., was the fee owner of property which included City Center Square in Kansas City. MLH, under date of July 21, 1987, gave a first deed of trust to Prudential securing the payment of a promissory note. The deed of trust was recorded July 27, 1987.

Thereafter, on May 30, 1989, MLH entered into a lease with Oppenheimer for office space in City Center Square. The lease was for a term of ten years, at a monthly rental of $3,306.79. A rider to the lease provided a schedule of increasing annual rents through 1999, with a monthly rental of $7,483.79 in the final lease year.

MLH defaulted in the payment of its promissory note to Prudential, and Prudential foreclosed its deed of trust. The foreclosure sale was on March 12, 1991, and Prudential was the purchaser.

A dispute arose between Prudential and Oppenheimer as to whether the foreclosure of the prior deed of trust ipso facto terminated the subordinate lease. Oppenheimer, desiring to escape, maintained the foreclosure did terminate its lease, while Prudential, desiring to hold Oppenheimer to the terms of the lease, contended the lease was not terminated by the foreclosure. Oppenheimer filed the declaratory judgment suit which resulted in the judgment now under review.

■ The common law rule is that a lease is ipso facto terminated when a prior deed of trust or mortgage is foreclosed. *Kansas City Mortgage Co. v. Industrial Comm'n*, 555 S.W.2d 58, 61 (Mo.App.1977); *S.S. Kresge Co. v. Shankman*, 240 Mo.App. 639, 212 S.W.2d 794, 801 (1948). It is competent for the parties, however, to contract for a different result. *P.M.K., Inc. v. Folsom Heights Dev. Co.*, 692 S.W.2d 395 (Mo.App.1985); *Dover Mobile Estates v. Fiber Form Prods.*, 220 Cal.App.3d 1494, 270 Cal.Rptr. 183, 185–86 (1990).

The first question in this case is whether the lease between the fee owner and Oppenheimer provides for the lease's survival of the foreclosure. Prudential says it does. Oppenheimer says it does not.

We first set out the salient parts of the lease:

18. Lease Subordinated

(a) This Lease and Tenants' interests and rights hereunder are and shall be subject and subordinate at all times to the lien of any first mortgage now existing or hereafter created on or against the Premises, the Building and or the Tract, and all amendments, restatements, renewals, modifications, consolidations, assignments and extensions thereof, without the necessity of any further instrument or act on the part of Tenant. Tenant agrees, at the election of the holder of any such mortgage, to attorn to any such holder. Tenant agrees upon demand to execute, acknowledge and deliver such instruments confirming such subordination and such instruments of attornment as shall be required by any such holder. Tenant hereby appoints Landlord as attorney-in-fact for Tenant irrevocably (such power of attorney being coupled with an interest) to execute, acknowledge and deliver any such instrument to be recorded. Notwithstanding the foregoing any such holder may at any time subordinate its mortgage to this lease without Tenants' consent by notice in writing to Tenant, and thereupon this Lease shall be deemed prior to such mortgage without regard to their respective dates of execution, delivery or recording and in that event such mortgagee shall have the same rights with respect to this Lease as though the Lease had been executed prior to the execution, delivery and recording of such mortgage and had been assigned to such mortgagee.

(b) Tenant agrees that neither any foreclosure of any such mortgage nor the institution of any such action or proceeding against Landlord, or any foreclosure or dispossess proceeding brought by the holder of any such mortgage to recover possession of the Premises, Building and/or Tract, shall by operation of law or otherwise except at the express election of the holder result in the cancellation or termination of this Lease or the obligations of Tenant hereunder and upon the request of any such holder of any such mortgage Tenant covenants and agrees to execute an instrument in writing satisfactory to such party or parties or to the purchaser of the mortgaged premises in foreclosure whereby Tenant attorneys to such successor in interest.

It would appear, upon a first reading, that the effect of the language of section 18(b) of the lease is to prevent the termination of the lease by foreclosure, unless the holder of the mortgage or deed of trust expressly elects termination.

Oppenheimer says, however, that section 18(b) is not applicable. It says that section 18(b) comes into play only when the lender, before the foreclosure, in accordance with section 18(a), has exercised its option to subordinate its deed of trust to the lease. Prudential had not exercised its section 18(a) power to subordinate its lien to the lease. When section 18(b) says the foreclosure of "any such mortgage" shall not terminate the lease, Oppenheimer says it refers only to a mortgage which has been subordinated to the lease under section 18(a).

We are unable to agree with Oppenheimer that the "any such mortgage" of section 18(b) is limited to a mortgage which may have been subordinated to the lease under section 18(a). Oppenheimer reads "any such mortgage" too restrictively. Section 18(a) refers to "any first mortgage now (i.e., at the date of the lease) existing or hereafter created on or against the premises." When section 18(b) refers to "any such mortgage," it refers to such a mortgage as section 18(a) deals with, to wit, "any first mortgage now (at the date of the lease) existing or hereafter created on or against the premises." There is no language in any part of section 18(a) or 18(b) which supports Oppenheimer's position that section 18(b) applies only to a mortgage which has been subordinated to the lease.

■ Section 18(a) allows the holder of the deed of trust to subordinate his deed of trust to the lease if he elects to do so. With respect to the termination or survival of the lease after foreclosure, the subordination would accomplish the same result as section 18(b), i.e., the lease, with its position of priority, would survive the foreclosure of the subordinated deed of trust. *Sinclair Ref. Co. v. Wyatt,* 347 Mo. 862, 149 S.W.2d 353, 356

(1941). Such subordination of the deed of trust, however, would carry with it other consequences, perhaps unexpected and perhaps undesirable from the standpoint of the lender. Section 18(b) is beamed at the precise situation we have in the present case, to wit, the question whether the lease survives the foreclosure of the prior mortgage, regardless whether the mortgage has been subordinated. The survival of the lease requires no election; in default of an election to terminate by the deed of trust holder, survival is the result. The lease is terminated only upon the express election of the holder of the deed of trust. It is a good principle of contract construction, that language which deals with a specific situation prevails over more general provisions if there is ambiguity or inconsistency between them. *Clayton Brokerage Co. v. Raleigh*, 679 S.W.2d 376, 378 (Mo.App.1984); *In re Marriage of Buchmiller*, 566 S.W.2d 256, 259 (Mo.App.1978).

Oppenheimer resists this construction of section 18(b) on the ground that it is inequitable. It points out that, if section 18(b) gives the purchaser at the foreclosure sale the election to terminate the tenant's lease or not, then the section always works to the advantage of the purchaser. The purchaser will terminate the lease if rentals reserved by the lease are below market, Oppenheimer notes, and will leave it in place if the rentals are above current market levels.

Oppenheimer's claim of inequity does not allow a re-writing of this section of the lease. Options always work to the advantage of the holder of the option; Oppenheimer knew that when it signed the lease. The fact the election provision of section 18(b) works to the purchaser's advantage is no ground for giving the language some meaning other than its plain meaning.

Oppenheimer says, secondly, that, if Prudential, contrary to Oppenheimer's contention, had the option under section 18(b) either to continue or to terminate the lease, Prudential actually made an election to terminate the lease after the foreclosure sale when it sent Oppenheimer a "Tenant's Estoppel and Attornment Certificate," with the request it sign it and return it to Prudential. The transmittal letter said: "If the estoppel and attornment certificate is acceptable to Prudential, you will be so notified and you will continue your tenancy in the building under the terms of your current lease as evidenced by the certificate. In the interim, please continue to make your rental payments payable to City Center Square receiver account, . . . ." This is by no means the "express election" to terminate, in the absence of which, according to section 18(b), the lease continues beyond foreclosure. Especially is this true when, earlier in the same letter, Prudential has specifically declared it does not intend to terminate Oppenheimer's lease.

With Prudential as the prevailing party in the main case, the order assessing attorney's fees against Prudential and in favor of Oppenheimer cannot stand.

The judgment of the trial court is reversed, and the case is remanded to the trial court for the entry of a new judgment in accordance with the foregoing opinion.

All concur.