**David HEFNER and Teresa L. Hefner, Plaintiffs–Appellants,**

v.

**Gary W. DAUSMANN, M.D., and Poplar Bluff Physicians Group, Inc., d/b/a Doctors Regional Medical Center, Defendants–Respondents.**

No. 22311.

Missouri Court of Appeals,
Southern District.
Division One.

May 14, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied June 4, 1999.

Application for Transfer Denied Aug. 24, 1999.

Thomas J. Casey and Stephen F. Meyerkord, Casey & Meyerkord, P.C., of St. Louis, for Appellants.

Kenneth W. Bean, Carl J. Geraci, Sandberg, Phoenix & VonGontard, P.C., St. Louis, for Poplar Bluff Physicians Group, Inc.

John L. Oliver, Jr., Oliver & Waltz, Cape Girardeau, for Dausmann.

PREWITT, Presiding J.

Plaintiffs sought damages for wrongful death of their child, claiming medical malpractice on the part of the listed Defendants and Barnes Hospital of the City of St. Louis. The original petition through the fourth amended petition, upon which this matter was tried in Butler County, was filed in the Circuit Court of the City of St. Louis. That court dismissed Barnes Hospital from the suit and transferred the case to the Circuit Court of Butler County. Following jury trial, judgment was entered in accordance with the verdict in favor of Defendants. Plaintiffs appeal.

Plaintiffs present one point relied on. There they contend that the Circuit Court in the City of St. Louis erred in dismissing the claim against Barnes Hospital and transferring the claim, because Plaintiffs' fourth amended petition "stated a claim against resident defendant Barnes Hospital under theories of vicarious liability. Thus venue in the City of St. Louis was proper." Defendants counter that dismissal of Barnes Hospital and argue that the transfer was proper because Barnes Hospital was "pretensively joined" in order to attempt to have venue in the City of St. Louis.

■ Because the trial court derived its opinion solely from written documents, "the usual rule of deference to the trail court's assessment of credibility ... does not apply." *Garner–Roe v. Anderson,* 894 S.W.2d 223, 227 (Mo.App.1995).

We therefore examine the record, at the time of the hearing on pretensive joinder, to determine if it reflected a cause of action against Barnes Hospital. Appellants alleged that joinder was not pretensive because the petition sufficiently stated a claim against resident defendant Barnes Hospital under the theories of vicarious liability due to actual and/or apparent agency.

■ Venue is pretensive if(1) the petition fails to state a claim for which relief can be granted against the resident defendant, or (2) the record in support of a motion asserting pretensive joinder establishes there is no cause of action against the resident defendant and the information available at the time the petition was filed would not support a reasonable legal opinion that a case could be made against that defendant. *State ex rel. Breckenridge v. Sweeney,* 920 S.W.2d 901, 902 (Mo.banc 1996). *See also Lynch v. Blanke Baer & Bowey Krimko,* 901 S.W.2d 147, 153 (Mo. App.1995).

■ Courts will not permit a plaintiff to engage in the pretense of joining defendants for the sole purpose of obtaining venue; the party claiming pretensive joinder bears the burden of persuasion and proof. *Lynch,* 901 S.W.2d at 153. "Pretensive joinder exists where joinder appears pretensive on the face of the pleadings and where no cause of action exists against the joined defendant." *Id .* If venue was properly in the City of St. Louis, steps taken by the St. Louis Circuit Court to transfer the cause were void. *State ex rel. Watts v. Hanna,* 868 S.W.2d 549, 551 (Mo.App.1994).

The pretensive joinder test is disjunctive: we need find only that the first or second prong applies. The second prong is conclusive in this appeal. We conclude that the record reflects that there is no cause of action against Barnes Hospital, and the information available at the time the petition was filed would not support a reasonable legal opinion otherwise. It is unnecessary to discuss the first prong of the pretensive joinder test.

■ A challenge of pretensive venue based on defective pleadings should be determined when the challenge is adjudicated and upon the state of the pleadings at that time. *Sweeney,* 920 S.W.2d at 903. However, "the pleadings, whether original or amended, must be premised on informa-

tion known to plaintiffs when the suit was originally filed." *Id.*

The adjudication of the challenge of pretensive joinder in this case was held after Appellants filed their Fourth Amended Petition. Sometime after that date, judging by the omission of reference in that amended petition, the Appellants became aware of an affiliation agreement between Barnes Hospital and Poplar Bluff Physicians Group, Inc. d/b/a Doctors Regional Medical Center (hereinafter Doctors Regional). A copy of the Clinical Affiliation Agreement was included with the pleadings filed by the present parties and Barnes Hospital on the motion to transfer. Because the Clinical Affiliation Agreement was part of the record at the time of adjudication, we have examined it to determine if it established that Barnes Hospital could be liable for the acts of Doctors Regional and concluded it does not.

Appellants cite *State ex rel. Cross v. Anderson*, 878 S.W.2d 37, 38 (Mo. banc 1994) to state that the trial court, when deciding if venue is pretensive, must look to the record. Although that is true, that case is not helpful to Appellants in this appeal. In *Cross*, the Supreme Court noted there was "no indication that the trial court considered whether the plaintiffs could have had a reasonable legal opinion that a case could be made against" defendant. *Id.* at 39. In the case presently before this court, the trial court did look to the record, including the Clinical Affiliation Agreement submitted by the defendants, and it thoroughly considered whether the Appellants could have had a reasonable legal opinion that a case could be made against Barnes Hospital. The Order states that the Appellants did not plead "any facts which would give rise to such vicarious liability." In fact, the Order begins by reciting that the trial court considered the "pleadings, exhibits, and authorities." The omissions made by the

trial court in *Cross* were not made by the trial court in this case.

The trial court noted in its Order that it had not been made aware of any Missouri cases involving affiliated corporations and the liability of one for the acts of another. The court, however, used the same standard as is applied in cases of related corporations, such as a parent and a subsidiary. Generally, two different corporations are treated as two different persons, even if one corporation is the sole shareholder of the other. *Grease Monkey Intern., Inc. v. Godat*, 916 S.W.2d 257, 262 (Mo.App.1995). A parent corporation is not responsible for the acts of its subsidiary except where the wronged party pierces the corporate veil. *Id.* "Two separate corporations may be treated as one only where there is such dominion and control that the controlled corporation has no separate mind, will or existence of its own and is but an alter ego for its principal. Such dominion and control must be established by evidence, and is not presumed." *Id.*[1]

### Actual Agency

To establish agency, evidence must support a finding that the principal has consented to the agent's acting on the principal's behalf, and the agent must be subject to the principal's control. *Wray v. Samuel U. Rodgers' Community Health Center, Inc.*, 901 S.W.2d 167, 170 (Mo.App. 1995). Absent evidence that the controlled corporation has no separate mind, will or existence of its own, the parent corporation is not liable for the acts of the subsidiary, or in this case, the affiliated corporation. *Grease Monkey*, 916 S.W.2d at 262. To establish a principal-agent relationship between two corporate entities, the controlled corporation must be merely a business conduit for its principal. *Sedalia Mercantile Bank and Trust Co. v. Loges Farms, Inc.* 740 S.W.2d 188, 202 (Mo.App.

---

1. By using "mind" or "will" in regard to corporations, the cases necessarily must mean the mind or will of one controlling the corpo-

ration or the collective minds or wills of those controlling the corporation. This opinion uses those terms in that sense.

1987). The control must be "actual, participatory and total." *Id.* at 202–203.

■ The question for this court to answer, therefore, is whether the facts alleged or presented establish that Doctors Regional is an agent of Barnes Hospital; that is, did Barnes Hospital consent to Doctors Regional acting on their behalf, and, if so, was Doctors Regional subject to Barnes Hospital's control?

The amended petition alleged agency in three paragraphs:

[paragraph] 8. That defendant Doctors Regional, and its administrators, directors, agents, servants and employees were at all times herein mentioned the actual agents of Barnes Hospital and as a result of such agency defendant Barnes Hospital is vicariously liable for the negligence of defendant Doctors Regional; that alternatively defendant Doctors Regional, and its administrators, directors, agents, servants and employees were at all times herein mentioned ostensible and apparent agents of defendant Barnes Hospital.

9. That it was represented to plaintiffs by defendant Doctors Regional, with the acquiescence, permission and knowledge of defendants Barnes, that Doctors Regional was affiliated with Barnes Hospital and that because of this affiliation, Doctors Regional, with the acquiescence, permission and knowledge of Barnes, represented to the community in which plaintiffs reside and to plaintiffs that Doctors Regional was a full services hospital with superior services, facilities, physicians, nurses and other health care providers.

10. That plaintiffs knew that plaintiff Teresa Hefner was to deliver twins and relied on the aforementioned representation of defendant Doctors Regional and Barnes Hospital and chose defendant Doctors Regional as the place where she would deliver her babies because of said representation.

Similar statements were reiterated in Count II of the amended petition. Respondents denied the allegations in these paragraphs.

Appellants alleged, in conclusionary terms, that Barnes Hospital was an actual, or an apparent, agent of Doctors Regional. They also alleged that "it was represented" to them that Doctors Regional was affiliated with Barnes Hospital. The "representation" was not explained through supporting affidavits or other documentation filed by Appellants at the time of the filing of their Fourth Amended Petition. Appellant Teresa Hefner had been deposed however, prior to the filing of the Fourth Amended Petition. A portion of her deposition reads:

A. [by Teresa Hefner] I went to Doctors Regional Medical Center, first of all because they delivered my daughter. Second of all, we found out that we were having twins and that is a complicated birth and we thought they were affiliated with Barnes so we thought we would have the babies there.

Q. [by counsel] And did anybody from Barnes Hospital or from St. Louis ever come down and say anything to you?

A. No one from St. Louis ever told me, said anything to me, no.

Q. And when did you discover this affiliation?

A. Well, it's all over town. There is a billboard out there by my home that says "touching life, setting the pace, seeing the future, Doctors Regional Hospital affiliated with Barnes." I have got, I think, pens at home; it's on my phone book.

Q. And that is all advertisements or things that are here in Poplar Bluff?

A. Yes.

Appellants' brief does not direct this court to other facts that would support a finding of agency on behalf of Barnes Hospital. Instead, they repeat the statements from their petition that they alleged the ultimate fact that Doctors Regional acted as the actual or apparent agent of Barnes

Hospital. The testimony given at her deposition does not support a reasonable legal opinion that Barnes Hospital is liable for the acts of Doctors Regional based upon advertisement that merely stated the two hospitals were "affiliated ."

Appellants also state that "it cannot be disputed that defendant provided plaintiffs with materials, including the Clinical Affiliation Agreement, indicating a direct relationship between defendants Barnes Hospital and Doctors Regional." Appellants direct us to Section 7.1 of the agreement which directs that Doctors Regional "shall adopt and continually enforce standards and criteria acceptable to Barnes for the appointment" of medical staff, "for the exercise of clinical privileges therein, and for corrective action during" their term.

The next section, Section 7.2 requires Doctors Regional to "adopt and continually enforce criteria and standards acceptable to Barnes for the development and implementation of a comprehensive assessment of the quality of medical care." Representatives of Barnes Hospital are granted access to records "as may be necessary to assist in the determination of whether such criteria and standards are being met" and to assist in evaluation of effectiveness of the programs.

Appellants also direct us to Section XI, "Operation of Medical Center." Within this section, Doctors Regional is instructed to designate two seats on its Board of Directors to be filled by individuals chosen by Barnes Hospital (Section 11.1). Additionally, Barnes is entitled to "participate in the selection of key administrative personnel" of Doctors Regional, (Section 11.3). Within Section XIII, Barnes has the right "to approve the insurance arrangements made by" Doctors Regional (Section 13.1). Appellants then quote, "perhaps most importantly," from Section 13.4 which allows either party to terminate the agreement for:

> b. a failure by [Doctors Regional] to adopt or enforce standards or criteria acceptable to Barnes for the appointment and reappointment of members of the medical staff of [Doctors Regional], for the exercise of clinical privileges therein, and for corrective action during the term of any appointment or reappointment.

Appellants conclude that the above sections clearly grant Barnes Hospital the authority to exercise and control the manner in which Doctors Regional conducted its business "on an everyday basis." They note that Barnes Hospital had the authority to choose two Board members, participate in selection of key administrative personnel, and that Doctors Regional must "act in conformance with the standards of Barnes Hospital" regarding "hiring medical personnel, granting privileges, and the administration of medical care."

■ The control a parent corporation must have over its subsidiary to be held liable for the subsidiary's actions must include control over finances and over the policy and business practice with respect to the particular transaction at issue. *Thomas Berkeley Consulting Eng'r., Inc., v. Zerman,* 911 S.W.2d 692, 695–696 (Mo. App.1995).

In this case, the Affiliation Agreement does evidence some control over the business conducted by Doctors Regional. It does not, however, establish that Barnes Hospital has the right to control the medical care patients receive at Doctors Regional. For example, the agreement does allow Barnes Hospital to enforce standards concerning the hiring of medical staff, but does not give Barnes Hospital the right to hire or fire particular members of the medical staff. Barnes Hospital, therefore, did not have the right to control the hiring of Teresa Hefner's physician, Dr. Dausmann.

The agreement also requires Doctors Regional to enforce standards regarding the assessment of the quality of care at their facility. Barnes Hospital has the right to review these procedures, and have access to the necessary documents to accomplish this evaluation. Such right is not

equivalent to Barnes Hospital having the right to implement its own procedures and to require Doctors Regional to follow them. The agreement does not establish that Doctors Regional is an agent of Barnes Hospital in its everyday operations, but that Barnes Hospital has a broader, more general influence or control over Doctors Regional.

The contentions made by Appellants are insufficient to support the required dominion and control by Barnes Hospital over Poplar Bluff Physicians Group. As the record does not show facts which would show dominion and control by Barnes over Doctors Regional to the point it had no separate mind, will or existence of its own, we conclude that Doctors Regional was not an actual agent of Barnes Hospital, and that the information available to Appellants at the time the suit was filed would not support a reasonable legal opinion that a case could be made against Barnes Hospital.

### Apparent Authority

■ To establish the apparent authority of a purported agent, the party relying on such authority must show that "the principal manifested his consent to the exercise of such authority or knowingly permitted the agent to assume the exercise of such authority, the person relying on this exercise of authority knew of the facts and, acting in good faith, had reason to believe, and actually believed, the agent possessed such authority, and the person relying on the appearance of authority changed his or her position and will be injured or suffer loss if the transaction executed by the agent does not bind the principal." *Earl v. St. Louis University,* 875 S.W.2d 234, 238 (Mo.App.1994). A principal may manifest consent to the exercise of authority by the agent "by direct, express statements," or by allowing an agent to occupy a position that carries a particular kind of authority, or may "cre-

ate the appearance of authority by 'prior acts.'" *Id.*

■ To support that Barnes Hospital consented to the exercise of authority, Appellants point to the advertising that was present in Appellants' hometown, Poplar Bluff. The advertisements, standing alone, do not show that Barnes Hospital "manifested its consent to the exercise of authority." To support their assertion that Appellants relied on the authority, and that they changed their position, Appellants refer us to Teresa Hefner's deposition, as quoted in the discussion of actual authority. Teresa Hefner's statements made in her deposition, while they possibly show reliance, do not show that Appellants changed their position based on such reliance. In her deposition, she also testified that they chose Doctors Regional because it was the facility for which her insurance would provide the most coverage. We conclude that Appellants failed to establish facts that would support a finding of apparent agency between Barnes Hospital and Doctors Regional.[2]

### Conclusion

We conclude that the affiliation agreement between Barnes Hospital and Defendant Poplar Bluff Physicians Group, Inc., does not create liability for it under the circumstances here and that agreement and the other information contained in the record would not support a reasonable legal opinion that a case could be made against Barnes Hospital.

The judgment is affirmed.

CROW, J., and PARRISH, J., concur.

---

2. Mindful that the present suit was filed before the appellate decision in *Ritter v. BJC Barnes Jewish–Christian Health Systems,* 987 S.W.2d 377 (Mo.App.E.D.1999), we neverthe-less find that case helpful regarding whether an affiliation agreement between hospitals may create vicarious liability due to actual agency, apparent authority or joint venture.