FIVE STAR QUALITY CARE—MO,
L.L.C., d/b/a Arbor View Healthcare &
Rehabilitation Center, Respondent,

v.

Bonnie Sue LAWSON, Public
Administrator, Appellant.

No. WD 69712.

Missouri Court of Appeals,
Western District.

April 7, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 2009.

William E. Erdrich, St. Joseph, MO, for Respondent.

Jere L. Loyd, St. Joseph, MO, for Appellant.

Before LISA WHITE HARDWICK, P.J., VICTOR C. HOWARD, Judge and ZEL M. FISCHER, Special Judge.

VICTOR C. HOWARD, Judge.

Bonnie Sue Lawson appeals the judgment of the trial court awarding Five Star Quality Care $16,779.65 on its breach of contract claim. In her sole point on appeal, Ms. Lawson claims that the trial court erred in holding her personally liable on the contract. Ms. Lawson's point is granted, and the judgment of the trial court is reversed.

### Factual and Procedural Background

Five Star Quality Care, doing business as Arbor View Healthcare and Rehabilitation Center ("Arbor View"), filed suit against Bonnie Sue Lawson, who was the guardian of Eloise Selby, a resident of Arbor View. In its petition, Arbor View claimed that Ms. Lawson had breached her agreement with Arbor View to use due care by not promptly following the proper procedures to ensure that Medicaid would cover Ms. Selby's fees. The trial court found that Ms. Lawson had breached her agreement with Arbor View by not using due care in carrying out her duties as Ms. Selby's guardian and that, in the absence of Medicaid coverage, Arbor View expended funds for the care of Ms. Selby. The trial court awarded $16,779.65 in damages to Arbor View and an additional $6,597.00 for costs and attorney fees.

Ms. Lawson, who was the public administrator of Buchanan County at the time, became the guardian of Ms. Selby in July 2004. Prior to Ms. Lawson's appointment as guardian, Ms. Selby had been a resident of Arbor View. In order to continue Ms. Selby's residence in Arbor View, Ms. Lawson executed an admission agreement which designated her as the "Fiduciary Party" and designated Ms. Selby as the "Resident." Paragraph I.B. of the agreement states that "[e]xcept as otherwise expressly provided to the contrary herein, if Fiduciary Party uses due care, Fiduciary Party will not become personally liable for the payment of the Resident's fees and charges by signing this agreement." An addendum to the agreement further provides in a paragraph titled "Benefit Disallowance" that "[i]f the Resident's third-party eligibility coverage is denied or terminated for any reason, the Resident and/or the Fiduciary Party shall pay, *from the Resident's assets,* any and all unpaid charges for care previously rendered to the extent permitted by law."

Prior to Ms. Lawson's appointment as guardian, Ms. Selby submitted an application for Medicaid benefits on July 6, 2004. Kathy Jordan, an employee of the Family Support Division ("the Division"), testified that Kim Adams, Ms. Lawson's deputy, called the Division in July 2004 and stated that the proper paperwork would be sent to the Division so that the cash value of Ms. Selby's two life insurance policies

could be verified. According to Ms. Jordan's testimony, a rejection of the application was sent to Ms. Lawson on August 19, 2004. The notice of rejection stated that the application was denied due to a failure to provide guardianship forms and to sign another form so that the cash value of the policies could be verified in order to determine Ms. Selby's eligibility to receive Medicaid benefits.

Ms. Lawson sent a second application for Medicaid benefits on September 16, 2004. Once the Division received the proper paperwork and was able to determine the cash value of the life insurance policies, it sent a rejection of the application to Ms. Lawson on November 5, 2004. The second application was denied because the cash value of the policies exceeded $999.99, making Ms. Selby ineligible to receive Medicaid benefits. Ms. Lawson submitted a third application on December 16, 2004, which was rejected on February 18, 2005, because the cash value of the policies remained in excess of $999.99.

Ms. Adams testified that while she had been employed in Ms. Lawson's office, an insurance policy could only be cashed in if Ms. Lawson had been appointed as a conservator, rather than solely as a guardian. Ms. Adams stated that, therefore, the notice of rejection of the second Medicaid application, which disclosed the cash value of the policies, should have triggered the filing of an application for a conservatorship. On July 8, 2005, Ms. Lawson filed a petition for conservatorship, and the order appointing her as conservator was signed the same day. Thereafter, the insurance policies were redeemed and Ms. Lawson forwarded the proceeds to Arbor View on June 30, 2005. Ms. Lawson's final application for Medicaid benefits, which was filed on June 30, 2005, was approved.

During the months prior to Ms. Lawson's appointment as conservator, Arbor View had continued to provide care for Ms. Selby, incurring expenses of $16,779.65. Arbor View filed suit against Ms. Lawson, seeking to recover $16,779.65 and attorney fees. Arbor View alleged that by waiting until June 8, 2005, to apply for a conservatorship, Ms. Lawson "failed to use due care as agreed" and failed to "exercise due and diligent care in the exercise of her duties as set out in RSMo 475.120." The trial court found that, by entering into the contract with Arbor View, Ms. Lawson had waived any immunities, and that by the terms of the contract, she had agreed to "use due care in the performance of her responsibilities to her ward including the payment of fees and charges for room, board, medical and other necessities required for the care of her ward[ ]." The court further found that Ms. Lawson failed to use due care by not acting on Ms. Selby's disqualification for Medicaid benefits for nearly nine months, and during that time, Arbor View continued to provide care for Ms. Selby. Therefore, the trial court granted judgment in favor of Arbor View, awarding $16,779.65 in damages and $6,597.00 in costs and attorney fees. This appeal by Ms. Lawson followed.

### Standard of Review

In a court-tried case, the appellate court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). However, the "[i]nterpretation of a contract is a question of law and is subject to *de novo* review." *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 648 (Mo.App. W.D.2006).

### Discussion

In her sole point on appeal, Ms. Lawson contends that the trial court erred in

granting judgment in favor of Arbor View and against her personally, rather than in her capacity as guardian or conservator. Ms. Lawson argues that under the express terms of the admission agreement, if Ms. Selby's application for Medicaid benefits was denied, Arbor View was required to seek payment for any unpaid charges from Ms. Selby's assets. In its petition and at trial, Arbor View argued that Ms. Lawson should be held personally liable for the unpaid charges due to her failure to exercise due care as required by the contract and in violation of the duties imposed upon her as a guardian under section 475.120.

In describing the general powers and duties of a guardian, section 475.120 states that the guardian "shall act in the best interest of the ward" and shall "provide for the ward's care, treatment, habilitation, education, support and maintenance." §§ 475.120.2–.3. According to section 475.120.4, a guardian "is not obligated by virtue of such guardian's appointment to use the guardian's own financial resources for the support of the ward." Another statute referred to at trial and in Ms. Lawson's brief is section 475.132, which governs the individual liability of a conservator. Section 475.132.2 provides that a "conservator is individually liable for obligations arising from ownership or control of property of the estate or for torts committed in the course of administration of the estate only if he is personally at fault."

■ While Arbor View argues that Ms. Lawson failed to use due care in the exercise of her duties as set out in section 475.120, Missouri cases characterize the duties of the guardian to the ward as creating a fiduciary relationship between the guardian and ward. *See, e.g., In re Mansour's Estate*, 238 Mo.App. 623, 185 S.W.2d 360, 369 (1945); *see also Scott v. Flynn*, 946 S.W.2d 248, 253 (Mo.App. E.D. 1997). Although *Scott* involved the fiduciary duties of a conservator, rather than a

guardian, the same analysis applies to Arbor View's claim. In *Scott*, the wife and daughter of a deceased ward brought an action asserting a breach of fiduciary duty claim against the ward's conservator. *Id.* The trial court noted that the wife and daughter failed to cite any authority supporting the contention that the conservator owed statutory or fiduciary duties to them. *Id.* Because the claim asserted a breach of the fiduciary duties owed to the ward, the court found that the wife and daughter lacked standing to bring the claim against the conservator. *Id.* Similarly, as the duties outlined in section 475.120 are owed to Ms. Selby, rather than to Arbor View, Ms. Lawson's alleged breach of those duties does not provide a basis for Arbor View to recover the costs associated with Ms. Selby's care.

■ As to section 475.132.2, which addresses the individual liability of a conservator, Arbor View asserted in a response to Ms. Lawson's motion to dismiss that its claim was based, in part, on torts committed during Ms. Lawson's conservatorship. However, Arbor View's action is based on Ms. Lawson's failure to promptly apply for a conservatorship and redeem Ms. Selby's life insurance policies. Therefore, the basis of Arbor View's claim shows that Ms. Lawson's alleged failure to use due care occurred while she was only the guardian of Ms. Selby, and prior to her appointment as conservator. Consequently, in the absence of facts showing that Ms. Lawson committed a tort during her conservatorship, Arbor View has no basis upon which to proceed against Ms. Lawson under section 475.132.2.

■ Without the aid of sections 475.120 and 475.132, Arbor View can recover from Ms. Lawson only if the terms of the admission agreement establish that she can be held personally liable for unpaid charges. "The guiding principle of

contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent." *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005). It is presumed that the intent of the parties is "expressed by the ordinary meaning of the contract's terms." *Id.* When a provision of a contract deals with a specific situation, it will prevail over a more general provision if there is ambiguity or inconsistency between them. *H.B. Oppenheimer & Co. v. Prudential Ins. Co. of Am.*, 876 S.W.2d 629, 632 (Mo.App. W.D.1994).

■ Arbor View claims that the terms of the admission agreement required Ms. Lawson to use due care and that if she did so, she would not become personally liable by signing the agreement. The term of the contract referred to by Arbor View is located under the heading "General Provisions" and provides that "[e]xcept as otherwise expressly provided to the contrary herein, if Fiduciary Party uses due care, Fiduciary Party will not become personally liable for the payment of the Resident's fees and charges by signing this agreement." However, Ms. Lawson points to a paragraph in the addendum to the admission agreement which states that "[i]f the Resident's third-party eligibility coverage is denied or terminated *for any reason*, the Resident and/or the Fiduciary Party shall pay, *from the Resident's assets*, any and all unpaid charges for care previously rendered to the extent permitted by law." (Emphasis added.) Ms. Lawson contends that pursuant to this term of the agreement, in the event that Ms. Selby's Medicaid applications were denied, Arbor View could only recover from Ms. Selby's assets.

Additionally, Ms. Lawson argues that this provision is more specific than the general provision obligating her to use due care in order to avoid personal liability, and therefore, it should be construed as a limitation on the general provision. We agree with both assertions.

The agreement designates the section which states that Ms. Lawson would become personally liable if she failed to use due care as a general provision. The same section also provides that the language therein will be superseded by any contrary provisions. The "benefit disallowance" paragraph cited by Ms. Lawson is both more specific than and contrary to the general provision in that it provides that, in the event that Ms. Selby's third-party eligibility coverage was denied for any reason, unpaid charges were to be recovered "from the Resident's assets." The benefit disallowance clause refers to a specific situation in which payment must come from the resident's assets. In requiring payment to be made from the resident's assets if third-party eligibility coverage is denied for any reason, the provision makes no exception for circumstances in which eligibility is denied due to the guardian's negligence. Arbor View's allegation is that Ms. Lawson failed to use due care by waiting nine months to apply for a conservatorship and cash in Ms. Selby's life insurance policies. Both Arbor View's petition and the trial court's judgment connected her failure to use due care with the denial of Ms. Selby's Medicaid applications.[1] However, even if it was Ms. Lawson's failure to use due care that caused Ms. Selby to

---

1. In its petition, Arbor View alleged that "[a]s a result of the failure of [Ms. Lawson] to secure a conservatorship ... and redeem the cash value of the insurance policies, thereby qualifying the ward for medical assistance [through] the Division, and thus securing funds necessary for the care of the ward, [Arbor View] has incurred unpaid costs." In its judgment, the trial court stated that Ms. Lawson "failed to use due care in securing the possession of two insurance policies that were the basis for the denial of Medicaid benefits of her Ward, Eloise Selby."

be ineligible for Medicaid benefits, in the absence of an exception in the benefit disallowance paragraph, Ms. Lawson's negligence falls within the condition that benefits be denied "for any reason."

By the terms of the admission agreement, Arbor View's recovery was limited to the assets of Ms. Selby in the event that her Medicaid applications were denied for any reason, including the presence of two life insurance policies that had not been redeemed due to Ms. Lawson's failure to promptly obtain a conservatorship. In addition, the admission agreement states that "in disputes arising from this Agreement, the prevailing party shall be entitled to attorney's fees." Therefore, the trial court's award of $16,779.65 in unpaid charges and $6,597.00 in costs and attorney fees against Ms. Lawson individually is reversed.

The judgment of the trial court is reversed.

All concur.