Emily WEST and William
Grant, Appellants,

v.

SHARP BONDING AGENCY, INC.,
Seneca Insurance Company, Inc., and
Bail USA, Inc., Respondents.

Nos. WD 71651, WD 72434.

Missouri Court of Appeals,
Western District.

Nov. 2, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 21, 2010.

Steve Garner and Jeff Bauer, Springfield, MO, and Daniel W. Craig, Kansas City, MO, for Appellants.

Michael P. Healy and Michael J. Fleming, Kansas City, MO, for Respondent Sharp Bonding Agency, Inc.

Patrick K. McMonigle and Molly Bartalos, Kansas City, MO, and Richard Morgan, Miami, FL, for Respondents Seneca Insurance Co., Inc., and Bail USA, Inc.

Before Division I: JAMES M. SMART, JR., Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

Appellants, Emily West and William Grant (West and Grant), appeal the Circuit Court of Jackson County's ("trial court") judgment granting summary judgment in favor of Respondents, Seneca Insurance Company, Inc. ("Seneca"), Bail USA, Inc. ("Bail USA"),[1] and Sharp Bonding Agency, Inc. ("Sharp Bonding"). The trial court granted summary judgment after finding no agency relationship existed between Seneca/Bail USA and Sharp Bonding regarding the facts of this case, thereby preventing vicarious liability from imputing to Seneca/Bail USA with respect to the conduct of Sharp Bonding. On appeal, West and Grant argue that the trial court erred in granting summary judgment because sufficient evidence was introduced to create a genuine issue of material fact as to whether an agency relationship existed between Seneca/Bail USA and Sharp Bonding on the facts of this case. We agree and therefore reverse the judgment of the trial court and remand for further

---

1. Collectively, we will refer to these parties as "Seneca/Bail USA" throughout this opinion. Bail USA is Seneca's Managing General Agent.

proceedings consistent with this opinion.[2]

## Factual and Procedural Background

The underlying claim at issue involves the tragic death of Tamar Grant. On June 13, 2002, Sharp Bonding employed Michael Iiams, Michael Raymond, and Raymond Brooks, ("the bounty hunters") to apprehend Anthony West, Tamar's brother, for failure to appear for a municipal traffic ticket. The bounty hunters went to the home of Emily West, Anthony and Tamar's mother, to recover Anthony. During the confrontation, the bounty hunters suffocated and killed Tamar Grant.[3]

On July 13, 2007, Emily West and William Grant, Tamar's father, brought a wrongful death action against the bounty hunters, Carol Sharp in her individual capacity, Sharp Bonding, and Seneca/Bail USA.[4] West and Grant claimed that Seneca/Bail USA was jointly and severally liable for the torts committed by the other defendants based on a principal-agent relationship between Seneca/Bail USA and Sharp Bonding. The referenced principal-agent relationship was created by a 1998 written contract titled "Bail Bond Agent Contract" (the "Bail Bond Agent Contract") in which Seneca/Bail USA appointed Sharp Bonding as its agent for the purpose of soliciting and executing bail bonds in Kansas and Missouri.

On September 20, 2008, Sharp Bonding filed a motion for partial summary judgment on behalf of Seneca/Bail USA claiming that Sharp Bonding and its employees were not agents or partners of Seneca/Bail USA as it related to the facts of the case. Thereafter, Seneca/Bail USA filed a motion for summary judgment arguing that, under the facts of the case, no agency relationship existed between Sharp Bonding and Seneca/Bail USA, and therefore, Seneca/Bail USA could not be vicariously liable for any acts of Sharp Bonding's employees that led to the death of Tamar Grant.

 On September 2, 2009, after a hearing on the motions, the trial court granted summary judgment in favor of Seneca/Bail USA and partial summary judgment in favor of Sharp Bonding, finding no agency relationship existed between the two defendants regarding the underlying claim. West and Grant timely appealed.[5]

---

2. We express no opinion as to the status, existence, or validity of any agency relationship between Seneca/Bail USA and Sharp Bonding, regarding the underlying claim, other than that this remains a genuine issue of fact on the present state of the record before this court.

3. Michael Iiams was convicted of involuntary manslaughter for his role in killing Tamar.

4. Only the claims against Sharp Bonding and Seneca/Bail USA are relevant to this appeal.

5. We have a duty to determine *sua sponte* whether we have jurisdiction to review an appeal. *See Fischer v. City of Washington*, 55 S.W.3d 372, 377 (Mo.App. E.D.2001). We acquire jurisdiction to review a case upon the issuance of a "final judgment" from a court below. Section 512.020(5); Rule 74.01. As a

general rule, for the purpose of appeal, a judgment must dispose of all parties and all issues in the case and leave nothing for future determination. *Goodson v. Nat'l Sports & Recreation, Inc.*, 136 S.W.3d 98, 99 (Mo.App. E.D.2004). If the trial court's judgment is not final, we lack authority to consider the appeal and must dismiss the appeal. *Fischer*, 55 S.W.3d at 377. Rule 74.01(b) provides an exception to this general rule by permitting the trial court to designate as final a judgment "as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." However, the trial court's certification of a judgment as final is not conclusive because we must independently determine if such judgment actually qualifies as a final judgment. *Fischer*, 55 S.W.3d at 377. In doing so, we look to the judgment's content,

## Standard of Review

Our review of a grant of summary judgment is "essentially *de novo*." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

When considering an appeal from the grant of summary judgment, we review the record in the light most favorable to the party against whom judgment was entered and "accord the non-movant the benefit of all reasonable inferences from the record." *Id.* Accordingly, summary judgment will only be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 380; *see also* Rule 74.04(c).[6]

In order to prove that a genuine issue exists, West and Grant must demonstrate that the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

Furthermore, " '[i]f movant requires an inference to establish his right to judgment as a matter of law, and the [summary judgment record] reasonably supports any inference other than (or in addition to) the movant's inference, a genuine dispute exists,' and thus, the movant is not entitled to summary judgment." *Firestone v. Van-Holt*, 186 S.W.3d 319, 323 (Mo.App. W.D. 2005) (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382).

## Analysis

 Whether an agency relationship exists is generally a factual question for the jury. *Johnson v. Bi–State Dev. Agency*, 793 S.W.2d 864, 867 (Mo. banc 1990) (*superseded on other grounds by statute*, § 537.600, *as recognized in State ex rel. Metropolitan St. Louis Sewer Dist. v. Sanders*, 807 S.W.2d 87 (Mo. banc 1991)). However, "this relationship is a question of law for the court to determine when the material facts are not in dispute, and 'only one reasonable conclusion can be drawn from the material facts.' " *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 384 (Mo.App. E.D.1999) (quoting *Johnson*, 793 S.W.2d at 867). Consequently, we must determine whether there is a genuine issue of material fact as to whether an agency relationship exists between Seneca/Bail USA and Sharp Bonding with regard to the underlying cause of action.

substance, and effect. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). "When the trial court resolves all issues and leaves open no remedies as to one of several defendants, the court may certify its judgment as final for purposes of appeal with regard to that defendant." *Crossman v. Yacubovich*, 290 S.W.3d 775, 778 n. 3 (Mo.App. E.D. 2009). The trial court's September 2, 2009 grant of summary judgment to Seneca/Bail USA and partial grant of summary judgment to Sharp Bonding resolved all claims pending against either Seneca or Bail USA or both.

Pursuant to Rule 74.01(b), the trial court expressly found that there was no just reason for delay and, therefore, certified the judgment as final for purposes of appeal. Consequently, we are vested with the authority to review the substantive nature of the present appeal.

6. All rule references are to Missouri Rules of Civil Procedure 2010, unless otherwise indicated.

**12**

### *Agency*

 Common law agency is the fiduciary relationship resulting from "the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002) (quoting from Restatement (Second) of Agency § 1 (1958)). However, "[a]n agency relationship may ... exist even where the parties did not intend to create the legal relationship or [intend] to subject themselves to the liabilities that the law imposes as a result." *Bach v. Winfield–Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008) (citing *Leidy v. Taliaferro*, 260 S.W.2d 504, 505 (Mo.1953)). Generally, all that is required to create an agency relationship is that: (1) the agent holds the power to alter legal relations between the principal and third parties; (2) the agent is a fiduciary with respect to matters within the scope of agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent. *Ford Motor Co.*, 63 S.W.3d at 642; *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 60 (Mo. banc 1993); *River's Bend Red–E–Mix, Inc. v. Parade Park Homes, Inc.*, 919 S.W.2d 1, 4 (Mo.App. W.D.1996). Accordingly, the determinative issue for this court is whether a genuine issue of material fact exists as to whether Sharp Bonding's issuance of the property bail bond, which ultimately led to the death of Tamar Grant, was within the scope and course of its agency relationship with Seneca/Bail USA.

Were this issue submitted to a jury, the jury would be instructed on common law agency via the use of Missouri Approved Instructions ("MAI") 13.06. Not so coincidentally, MAI 13.06 states that acts are within the "scope and course of agency" if:

1. they [are] performed by [Sharp Bonding] to serve the business interests of [Seneca/Bail USA] according to an express or implied agreement with [Seneca/Bail USA], and

2. [Seneca/Bail USA] either controlled or ha[s] the *right to control* the physical conduct of [Sharp Bonding].

MAI 13.06 [2002] (emphasis added).

While both elements of agency are in dispute, the primary controversy involves the *right to control*. West and Grant argue that the Bail Bond Agent Contract grants Seneca/Bail USA the right to control every aspect of Sharp Bonding's business, and this right sufficiently establishes an agency relationship. In contrast, Seneca/Bail USA and Sharp Bonding argue no agency relationship exists because Seneca/Bail USA exercises no *actual* control over Sharp Bonding with regard to property bonds. The trial court agreed with Seneca/Bail USA and Sharp Bonding, finding no agency relationship existed because Seneca/Bail USA did not exercise *actual* control over Sharp Bonding's property bond business.

To support their position, Seneca/Bail USA and Sharp Bonding primarily rely on two cases, which the trial court also relied upon: *Ritter v. BJC Barnes Jewish Christian Health Systems*, 987 S.W.2d 377 (Mo. App. E.D.1999), and *Hefner v. Dausmann*, 996 S.W.2d 660 (Mo.App. S.D.1999). Both *Ritter* and *Hefner* involved the issue of whether a parent medical corporate entity was liable for the allegedly negligent medical care provided to patients of its subsidiary medical corporate entity by its subsidiary medical corporate entity. *Ritter*, 987 S.W.2d at 384–87; *Hefner*, 996 S.W.2d at 664–67. Both of these cases reference control that is "actual, participatory and total" in the context of the type of control necessary to pierce the corporate veil between a parent corporation and its subsid-

iary, not common law agency. *Ritter*, 987 S.W.2d at 384–85; *Hefner*, 996 S.W.2d at 664–65.[7] West and Grant, however, are not seeking to pierce the corporate veil between Sharp Bonding and Seneca/Bail USA; rather, West and Grant seek to establish vicarious liability based upon the right of control held by Seneca/Bail USA over Sharp Bonding under common law agency standards.

Seneca/Bail USA and Sharp Bonding have confused the standard for parent/subsidiary liability under the "actual, participatory and total control" standard for piercing the corporate veil with the standard for establishing common law agency.[8] Here, the question presented is not one of piercing the corporate veil because Seneca/Bail USA and Sharp Bonding are not in the same corporate chain. Instead, Seneca/Bail USA and Sharp Bonding executed a contract appointing Sharp Bonding as Seneca/Bail USA's exclusive agent. Accordingly, general agency principles must be applied.

█ Likewise, when the trial court expressly found that no agency relationship existed because Seneca/Bail USA exercised no **actual** control over Sharp Bonding, the trial court erroneously applied the law regarding the elements of common law agency. Under Missouri agency law, the **right to control,** rather than the **actual** exertion of control, is sufficient to permit vicarious liability to attach. *Bach*, 257 S.W.3d at 608; *Hodges v. City of St. Louis*, 217 S.W.3d 278, 282 (Mo. banc 2007) (Price, J., concurring in part) (the right to control is the "principal consideration" in determining whether an agency relationship exists); *Bost v. Clark*, 116 S.W.3d 667, 676 (Mo.App. W.D.2003) (the touchstone in establishing agency is whether the party sought to be held liable has the right to control the conduct of another); *Ascoli v. Hinck*, 256 S.W.3d 592, 594 (Mo.App. W.D.2008) (the party resisting summary judgment is not required to show actual control, but instead only the right to control).

### Evidence of Agency Relationship

█ As mentioned above, because this is an appeal from a grant of summary judgment, we need not defer to the trial court's findings. Accordingly, when considering whether Sharp Bonding's acts

---

7. Not so coincidentally, the alternative argument in *Ritter* was that the parent medical corporate entity should be vicariously liable for the acts of its subsidiary medical corporate entity under general agency principles, and when addressing that topic, the *Ritter* court repeated the principle of law that we reiterate today: " 'The touchstone is whether the party sought to be held liable has the control *or right to control* the conduct of another in the performance of an act.' " *Ritter*, 987 S.W.2d at 385 (emphasis added) (quoting *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. banc 1996)). And, not so coincidentally, in both *Ritter* and *Hefner*, the opinions focused on the fact that the parent medical corporate entity did not possess "control or *right to control* [the] medical care of patients" at the subsidiary medical corporate entity. *Id.*; *Hefner*, 996 S.W.2d at 666 (emphasis added).

8. *See* the Restatement (Second) of Agency, in which the following discussion is found in the Reporter's Notes at this section: "It is useful to distinguish situations in which liability is imposed on a parent [corporation] because of the existence of the agency relation, in our common-law understanding of that relation, from cases in which the corporate veil of the subsidiary is pierced for other reasons of policy. Unfortunately, however, the courts have not always observed the distinction between these two separate bases for parent's [corporation] liability. When liability is fastened upon the parent [corporation] it is said that the subsidiary [corporation] is a 'mere agent.' The result has been a weakening and muddying of the term 'agent'...." Restatement (Second) of Agency § 14M (1958), *superseded by* Restatement (Third) of Agency (2006).

were within its scope and course of agency with Seneca/Bail USA, we look to see whether Sharp Bonding issued the property bond in question to serve the business interests of Seneca/Bail USA according to an express or implied agreement and whether Seneca/Bail USA exercised actual control over *or* had the right to control Sharp Bonding's property bond business. When viewing the facts in the light most favorable to West and Grant, we find that the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts," establishing a genuine issue as to the existence of an agency relationship between Seneca/Bail USA and Sharp Bonding. This evidence includes, but is not limited to: (1) the express terms of the Bail Bond Agent Contract; (2) testimony as to the understanding of obligations under the Bail Bond Agent Contract; and (3) the actual conduct of Seneca/Bail USA and Sharp Bonding.

### a. Bail Bond Agent Contract

While this is not a breach of contract case, nor even a dispute between the two parties to the contract, Seneca/Bail USA and Sharp Bonding, the Bail Bond Agent Contract is relevant to understanding the scope of the relationship between Seneca/Bail USA and Sharp Bonding.[9] In review of the Bail Bond Agent Contract, we find that, consistent throughout the Bail Bond Agent Contract, the terms refer only to *bonds* or *bail bonds*.[10] In pertinent part, the Bail Bond Agent Contract states:

[Seneca/Bail USA] appoints [Sharp Bonding] as an *Agent* of [Seneca/Bail USA] in the State of *Kansas & Missouri* for the sole purpose of soliciting and executing *bail bonds* .... [Sharp Bonding] shall solicit and execute *bonds* solely in the name of [Seneca/Bail USA] and in the state(s) designated. [Sharp Bonding] shall not solicit or execute *bail bonds* in the name of any other surety without prior written approval of [Seneca/Bail USA].

(Emphasis added.)

The Bail Bond Agent Contract does not differentiate between surety bonds and property bonds and, in fact, expressly prohibits Sharp Bonding from issuing bonds in the name of any surety besides Seneca/Bail USA without prior written approval of Seneca/Bail USA.

### b. Testimony as to Understanding of Obligations

While the terms of the Bail Bond Agent Contract may be sufficient by themselves for a jury to reasonably conclude that Sharp Bonding is an agent of Seneca/Bail USA for all bail bonding purposes, a jury could reasonably conclude that the testimony of Sharp Bonding and Seneca/Bail USA's representatives further support such a conclusion. In her deposition, Carol Sharp stated:

- Sharp Bonding never obtained written approval from Seneca/Bail USA which

---

9. While West and Grant are not parties to the Bail Bond Agent Contract, they are entitled to question the instrument and/or dispute the status of the parties created by the contract terms. *See Brenner v. Socony Vacuum Oil Co.*, 236 Mo.App. 524, 158 S.W.2d 171, 175 (1942) ("[W]here the suit is not between the parties to the contract a third party can question the instrument, itself, and dispute the status it apparently creates and show that as a matter of fact the status was otherwise.")

(quoting *Greene et ux. v. Spinning*, 48 S.W.2d 51, 57 (Mo.App.1931)).

10. A *"bail bond"* is "a bond for a specified monetary amount which is executed by the defendant and a qualified licensee ... and which is issued to a court or authorized officer as security for the subsequent court appearance of the defendant upon the defendant's release from actual custody pending the appearance." Section 374.700(2).

would have allowed Sharp Bonding to write bonds using another surety.

- "Anyone who writes a bond is a surety."
- Seneca/Bail USA has *"the right to control every aspect"* of Sharp Bonding's business.

In her deposition, Cheryl Burns [11] stated:

- Seneca/Bail USA never gave prior written approval for Sharp Bonding to write bail bonds for any other surety.
- Sharp Bonding gave up the right to control all aspects of its bonding business to Seneca/Bail USA.

### c. Actual Conduct

The trial court found that Sharp Bonding and Seneca/Bail USA had "confirmed among themselves that property bonds were not subject to the [Bail Bond Agent Contract's] provisions and all parties performed in a manner consistent with this interpretation of the agreement's scope." While this interpretation of the facts is relevant to the trial court's conclusion that Seneca/Bail USA did not exercise *actual* authority over Sharp Bonding as it relates to property bonds, this interpretation (1) deprives the non-movant of the benefit of all reasonable inferences relating to the facts surrounding Seneca/Bail USA's *right to control* Sharp Bonding; and (2) constitutes the trial court's use of extrinsic evidence to interpret the meaning of the Bail Bond Agent Contract. We address these issues in reverse order.

### Use of Extrinsic Evidence to Interpret the Bail Bond Agent Contract

Because the issue of whether an agency relationship exists so heavily relies on the Bail Bond Agent Contract, Seneca/Bail USA's and Sharp Bonding's understanding of it, and Seneca/Bail USA's and Sharp

Bonding's actions under it, we briefly discuss the principles of contract interpretation and the trial court's use of extrinsic evidence.

▮▮▮ " 'The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention.' " *Vest v. Kansas City Homes, L.L.C.*, 288 S.W.3d 304, 310 (Mo.App. W.D.2009) (quoting *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973)). The intent of the parties must be determined based on the contract alone unless the contract is ambiguous. *Ethridge v. Tier-One Bank*, 226 S.W.3d 127, 131 (Mo. banc 2007). Furthermore, "[w]here a written contract is unambiguous and complete on its face, parol evidence may not be introduced to vary or contradict the terms of the agreement." *Helterbrand v. Five Star Mobile Home Sales, Inc.*, 48 S.W.3d 649, 658 (Mo.App. W.D.2001). *See also Devino v. Starks*, 132 S.W.3d 307, 313 n. 6 (Mo.App. W.D.2004) ("[W]here the language of a contract is clear and unambiguous, evidence related to the parties' subsequent actions" may not be considered.) Where the contract is ambiguous, however, " 'the intent of the parties must be established by extrinsic evidence and so a question of fact arises as to the intent of the parties to its meaning.' " *Maritz Holdings, Inc. v. Fed. Ins. Co.*, 298 S.W.3d 92, 101 (Mo.App. E.D.2009) (quoting *Chadwick v. Chadwick*, 260 S.W.3d 421, 425 (Mo.App. S.D.2008)). Further, "[w]hen considering an oral [agreement], ascertainment of its terms, if they are in dispute, is a question of fact for the jury." *Envtl. Waste Mgmt., Inc. v. Industr. Excavating & Equip., Inc.*, 981 S.W.2d 607, 611 (Mo.App. W.D.1998). Summary judgment, therefore, "is only appropriate in contract cases where there is

---

11. Bail USA's President and Seneca/Bail USA's designated corporate representative.

no ambiguity and the apparent meaning of the terms can be determined within the four corners of the document." *Maritz Holdings, Inc.*, 298 S.W.3d at 101.

 A contract is ambiguous, and in need of a court's interpretation, " 'if its terms are susceptible to honest and fair differences.' " *Ethridge*, 226 S.W.3d at 131 (citation omitted). " 'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the [contract].' " *Vest*, 288 S.W.3d at 310 (quoting *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.2d 810, 814 (Mo. banc 1997)). "In determining whether a contract is ambiguous, the trial court must consider the whole document and the natural and ordinary meaning of the language." *Maritz Holdings*, 298 S.W.3d at 99 (citing *Teets v. Am. Family Mut. Ins. Co.*, 272 S.W.3d 455, 462 (Mo.App. E.D.2008)). Upon a finding of ambiguity, extrinsic evidence may be used to ascertain the intent of the parties as to the apparent meaning of the contract terms. *Chadwick*, 260 S.W.3d at 425. However, when ambiguity is found, it becomes the jury's responsibility to ascertain the intent of the parties and summary judgment is inappropriate. *Maritz Holdings*, 298 S.W.3d at 101.

The trial court expressly grounded its opinion on extrinsic evidence of the oral understanding between Seneca/Bail USA and Sharp Bonding pertaining to the parties' interpretation of the Bail Bond Agent Contract. The trial court relied on this extrinsic evidence to supplement the actual contractual language, finding: "Sharp Bonding is authorized to solicit and execute *surety bail bonds* for which Bail USA/Seneca act as sureties—all as governed by the terms of the January 2, 1998 agreement." (Emphasis added.) As illustrated above, the language of the Bail Bond Agent Contract does *not* differentiate between surety bonds and property bonds.

This court, however, need not address the issue of whether the Bail Bond Agent Contract was ambiguous because, regardless of whether the contract was actually ambiguous or not, the trial court's use of extrinsic evidence shows that, at least in the trial court's mind, there was some ambiguity. The result of this contractual ambiguity is that the agency issue remains for determination by the fact finder, and the grant of summary judgment is improper.[12] *See Maritz*, 298 S.W.3d at 101 ("Where, as here, the contract is ambiguous, the intent of the parties must be established by extrinsic evidence and so a

12. Furthermore, the use of this extrinsic evidence arguably contradicts the express language of the Bail Bond Agent Contract. In pertinent part, the Bail Bond Agent Contract states:

> Each of the parties hereto acknowledges that this Agreement expresses his or its entire understanding; that there have been no representations made by any party hereto except as set forth herein; that this Agreement shall not be subject to change or modification except by execution of another instrument in writing subscribed to by each of the parties hereto. . . .

The express language prohibits any modification of the Bail Bond Agent Contract unless it is made in writing and signed by all parties. However, perhaps only by coincidence, the parties to the contract now claim to have an oral understanding of the Bail Bond Agent Contract that modifies its terms—that is, that where the Bail Bond Agent Contract refers to "bail bonds," the parties only intend for the Bail Bond Agent Contract to cover "surety bail bonds" and not "property bail bonds." The trial court's reliance on this oral understanding testified to by the parties to the Bail Bond Agent Contract further demonstrates the need for a jury to determine the credibility of the parties' testimony regarding the terms of the Bail Bond Agent Contract and whether, in fact, the contracting parties did or did not modify the interpretation of the terms of the Bail Bond Agent Contract prior to issuance of the property bond in question.

question of fact arises as to the intent of the parties to its meaning; thus, it is error to grant summary judgment. In fact, where the parties disagree on the meaning and effect of the contract, and parol evidence is required, a motion for summary judgment based on interpretation of the contract should be denied.") (internal citations and quotation marks omitted).

### Genuine Issue of Material Fact

Giving the non-movants the benefit of all reasonable inferences from the record:

#### a. *Scope and Course of Agency—Prong 1*

A jury could reasonably conclude that Sharp Bonding's acts were performed to serve the business interests of Seneca/Bail USA. Pursuant to the Bail Bond Agent Contract, Sharp Bonding was permitted to solicit and execute bail bonds solely in the name of Seneca/Bail USA. Furthermore, the Bail Bond Agent Contract mandates Seneca/Bail USA receive 18% of every bail bond premium collected—with no distinction made between types of bail bonds in which Sharp Bonding is obligated to pay under.

A jury could reasonably infer that Seneca/Bail USA benefitted through its exclusive relationship with Sharp Bonding and the bail bond premiums Sharp Bonding paid to Seneca/Bail USA pursuant to the Bail Bond Agent Contract. Because there are competing inferences from the Bail Bond Agent Contract, it is the jury's responsibility, not the trial court's, to evaluate which inference is more credible.

#### b. *Scope and Course of Agency—Prong 2*

While Seneca/Bail USA and Sharp Bonding argue they do not have an agency relationship with each other as to the issuance of property bonds, West and Grant argue that the Bail Bond Agent Contract grants Seneca/Bail USA the right to control *every* aspect of Sharp Bonding's business, including property bonds. Seneca/Bail USA claims the Bail Bond Agent Contract expressly states that Seneca/Bail USA has no involvement in Sharp Bonding's apprehension of bond fugitives, which they argue removes any right of control Seneca/Bail USA has over Sharp Bonding. However, other provisions of the Bail Bond Agent Contract contradict this provision and detail Seneca/Bail USA's exclusive right of control over Sharp Bonding, bolstering West and Grant's argument.[13] In sum, the Bail Bond Agent Contract supports two plausible but competing inferences, from which a jury might reason-

---

**13.** Furthermore, case law rejects Seneca/Bail USA's argument that a statement in the contract which tries to disclaim liability will somehow bind an injured third party. Seneca/Bail USA argues that the provision in the Bail Bond Agent Contract disclaiming liability for bounty hunting removes any possibility of vicarious liability imputing to Seneca/Bail USA for Sharp Bonding's acts:

By execution of the [Bail Bond Contract] by [Sharp Bonding], [Sharp Bonding] *acknowledges* and *assumes full liability* and provides [Seneca/Bail USA] with complete indemnification for all employees, agents, and independent contractors with whom [Sharp Bonding] may contract to assist [Sharp Bonding] in [its] bail bond business.

However, contractual language attempting to limit liability cannot trump the actual reservations of the right to control found elsewhere in the contract. *See, e.g., Five Star Quality Care–MO, L.L.C. v. Lawson*, 283 S.W.3d 811, 815 (Mo.App. W.D.2009) (citing *H.B. Oppenheimer & Co. v. Prudential Ins. Co. of Am.*, 876 S.W.2d 629, 632 (Mo.App. W.D.1994)); *see also, Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 858–59 (8th Cir.2010) (decided under Missouri law). Moreover, when a contract appears to be contradictory, a factual question arises as to whether the right of control exists, thereby making summary judgment inappropriate. *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. banc 1996).

**18**

ably conclude that Sharp Bonding is an agent of Seneca/Bail USA regarding all bail bonds issued by Sharp Bonding, including the property bail bond in question.[14]

### Conclusion

There remain genuine issues of material fact as to whether an agency relationship existed between Seneca/Bail USA and Sharp Bonding with regard to the property bond in question. Because this is an appeal from the grant of summary judgment and the record must be reviewed in the light most favorable to West and Grant (i.e. the parties against whom judgment was entered), summary judgment is improper. The trial court's judgment in favor of Respondents, Seneca/Bail USA and Sharp Bonding, is, therefore, reversed and remanded for further proceedings consistent with this opinion.

JAMES M. SMART, JR., Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.

14. We express no opinion as to which of the competing inferences is ***most*** plausible. That

determination is for a jury to make at a later date.